**Michael PLANTE, Plaintiff, Appellant,**

**v.**

**HOBART CORPORATION and the R.M. Flagg Company, Defendants, Appellees.**

**No. 84–1908.**

United States Court of Appeals, First Circuit.

Argued June 6, 1985.

Decided Sept. 4, 1985.

Edward W. Gould, Bangor, Me., with whom George Z. Singal and Gross, Minsky, Mogul & Singal, P.A., Bangor, Me., were on brief, for Michael Plante.

Glen L. Porter, Bangor, Me., with whom Arnold L. Veague and Eaton, Peabody, Bradford & Veague, Bangor, Me., were on brief, for The R.M. Flagg Co.

S. Stuart Eilers, Cleveland, Ohio, with whom Thompson, Hine & Flory, Cleveland, Ohio, John W. Ballou and Mitchell & Stearns, Bangor, Me., were on brief, for Hobart Corp.

Before CAMPBELL, Chief Judge, BREYER and DAVIS,* Circuit Judges.

* Of the Federal Circuit, sitting by designation.

BREYER, Circuit Judge.

Michael Plante was the victim of a serious accident at the food processing plant of Potato Services, Inc. ("PSI"), in Presque Isle, Maine. The accident took place when potatoes clogged one of the grinding machines. Plante swung the grinder out away from the assembly line, pushed the "off" button, and put his hand into the machine to scoop out the potatoes. Unfortunately, the machine did not go off, apparently because Plante had not pushed the button hard enough; the grinder cut and mangled Plante's hand.

Maine's workers' compensation statute evidently prevents Plante from seeking additional tort compensation from PSI. Plante therefore brought this Maine tort law diversity action not against PSI, but against the grinder's manufacturer, Hobart Corporation, and the grinder's distributor, the R.M. Flagg Company. The jury rejected Plante's theory that 'negligent design' of the grinder caused his accident. But, it found that the accident was due, in part, to the defendants' 'negligent failure to warn' about the grinder's dangers. It found that the accident was also due, in part, to Flagg's 'negligent delivery' of the machine to PSI.

The district court, finding the evidence insufficient to support a 'negligent failure to warn' theory, set aside the verdict against Hobart. It allowed the judgment against Flagg, however, but only insofar as the judgment rested upon the theory of 'negligent delivery.' Plante and Flagg filed cross appeals. Sometime after we heard argument and work on this opinion was well under way, we were informed that Plante and Flagg settled their dispute. Rather than rewrite the opinion purely for stylistic reasons, we have decided to release it as modified so that it considers only Plante's appeal from the judgment in favor of Hobart. We conclude that the evidence is legally insufficient to permit recovery against Hobart. We therefore affirm the district court's judgment.

## I

Viewing the evidence favorably from Plante's perspective, *Jordan v. United States Lines, Inc.*, 738 F.2d 48, 49 (1st Cir.1984), we believe it shows the following facts. The grinder in question, Hobart model 4152, is designed to chop about 85 to 90 pounds of meat per minute. It normally comes equipped with several important safety features. First, Hobart provides a special device, called a "stomper," to clear away any material that may clog the grinder. Second, the grinding blades themselves come covered with a special guard attached to a 'feed pan,' which prevents anyone from touching the blades with his hands. Third, a special 'safety interlock' automatically turns the machine off should anyone lift or remove the feedpan or guard. The machine can then be restarted only by pushing an "on" button. Fourth, the machine stops quickly—within three seconds of the time one pushes the "off" button. Fifth, the machine carries two warning labels pointing out that putting hands into the machine, or trying to defeat the safety devices, is highly dangerous. The labels state:

### WARNING

THIS CHOPPER CYLINDER IS TO BE USED ONLY WITH A SUITABLE GUARD MOUNTED ABOVE FEED OEPNING. DO NOT PUT HAND INTO FEED OPENING OF CYLINDER OR FINGERS INTO HOLES OF CHOPPER PLATE.

### USE FEED STOMPER

\* \* \* \* \* \*

### WARNING

DO NOT OPERATE THIS MACHINE WITHOUT THE SAFETY DEVICES PROVIDED BY HOBART:
1. GUARD OVER CYLINDER OPENING.
2. ELECTRICAL INTERLOCK UNDER FEED PAN.

Before 1972 Hobart made a special model 4152 without the feed pan or guard—a

model useful for certain special applications. When customers bought this special model, however, Hobart provided other special guards, special instructions, a special extra-long stomper (for clearing clogs), and a special warning label. It also insisted that any customer buying this more dangerous machine certify that it had received this special equipment and would install it.

PSI used two Hobart model 4152 grinders—to chop potatoes, not meat. It used them on an assembly line where, apparently, in PSI's opinion, the ordinary safety devices got in the way. PSI, therefore, 'modified' the grinder. Instead of using the ordinary feedpan and guard, it placed a special hopper just above the grinder's 'feed opening.' There was only about ½ inch of space between the bottom of the hopper and the top of the feed opening, so no one could put his hands inside. But, PSI also took the grinder off the legs that Hobart had designed for it and welded it to a swivel cylinder. When the grinder was in its ordinary position, under the hopper, on the assembly line, no one could get his fingers into it. But, an operator could swivel the grinder away from the assembly line (and hopper), in which case the grinding blades were exposed. Of course, since PSI had removed Hobart's feedpan and guard, the 'safety interlock' ordinarily would have prevented the machine from working at all. But, PSI got it to work by defeating the safety interlock. PSI welded down the relevant button; thus insofar as the 'safety interlock' was concerned, the machine was always "on." Consequently, the operator could expose the machine's blades without the machine turning off. And the stage was set for tragedy.

PSI ordered its two Hobart grinders from the distributor, Flagg. In each instance PSI specifically asked for a grinder without the normal feedpan and guard. In each instance, it told Flagg that it would use the machine in a special 'customized' way; it certified (to Flagg) in writing that it did not intend to use the feedpan and guard; and, it added that it would build its own special feed-assembly with its own safety devices. Hobart apparently shipped the first grinder (a special one) without the feedpan and guard. But, Flagg ordered the second grinder—the one that caused the accident—after 1972 when Hobart discontinued its special version of model 4152. Thus, responding to PSI's order, Hobart shipped a regular model 4152 with feedpan and guard to Flagg. Flagg, in turn, sent the grinder on to PSI. Flagg says it even included the feedpan and guard; but Plante denies this; and the jury agreed with Plante. Thus, we assume that Flagg sent PSI a regular model 4152 without feedpan or guard.

The evidence suggests that PSI was aware of the risks that its 'customized' grinder created, for it promulgated a special set of safety instructions, telling, for example, its "specialty foremen" to be certain always to use a stomper (and never use hands) to clear out material clogging the grinder. PSI evidently allowed only certain workers to go near an 'exposed' machine; Plante testified that he had been instructed not to go near operating machinery. He recognized the machine was dangerous, particularly when the blades were exposed. His unsuccessful effort to push the "off" button also suggests he knew the machine lacked a working safety interlock.

The basic legal questions before us arise out of the evidence showing these, and related, facts. We must answer two questions. 1) Should the district court have allowed the jury's general verdict against Hobart to stand on the basis of Plante's theory that his accident was caused by Hobart's 'negligent design' of the grinder? 2) Was the evidence sufficient to allow a reasonable juror to conclude that 'negligent failure to warn' by Hobart caused the accident?

In our view, the answer to both questions is 'no.' We are not expressing any view about whether *someone's* negligence caused the accident. We are, rather, saying that this defendant did not cause the accident through its negligence; and, we do not see how any reasonable person could

disagree. We shall consider each of the theories in turn.

## II

■ 1. Plante's 'negligent design' theory focused on the possibility that Hobart could have placed a light next to the "off" switch so that a person pushing the switch could tell visually whether he had, for example, pushed it hard enough. Evidence suggested that such a light would help avoid accidents when the machine was used in a noisy environment (where the grinder's running motor might be hard to hear). And, the light might have been particularly helpful given the particularly dangerous way in which PSI intended to use the machine. We need not decide, however, the precise extent to which Hobart must design with a special use like PSI's in mind, for the jury simply found that Hobart's failure to incorporate the light was not negligent. Given all Hobart' other safety features, and its warnings, we cannot say the jury's finding was unreasonable. Indeed, Plante's argument on this appeal consists of an effort to interpret away that finding. He says the jury's answer to the relevant special interrogatory showed it thought Hobart's design was not negligent in respect to Hobart's "intended," not its "actual," use. The jury, however, made no such distinction. It said:

> "[T]he grinder as designed by Hobart was not dangerous for the use to which it was being put at the time of the plaintiff's injury."

That finding has sufficient record support and bars recovery on a "negligent design" theory.

■ 2. Plante also claimed that his accident was caused by Hobart's negligent failure to provide an adequate warning. The district court set aside the jury's verdict based on this theory. We agree with the district court that the evidence is insufficient to allow a reasonable jury to reach either the findings of "negligence" or of "causal connection" that underlie it.

■ The basic reason why any failure to provide additional warnings could not here have been negligent, is that the relevant danger was obvious. General principles of tort law, summarizing the results of many cases, suggest that a 'failure to warn' amounts to 'negligence' only where the supplier of a dangerous good "has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition." *Restatement of Torts (2d)* § 388 (1965). Where a danger involved in using a product is obvious and apparent, discernible by casual inspection, a supplier is not negligent in failing to warn of that danger. *Id.*, comment k. "If this were not true, a manufacturer could not design and sell a pocket knife, axe, planer or gun." *Ward v. Hobart Manufacturing Co.*, 450 F.2d 1176, 1188 n. 41 (5th Cir.1971) (quoting *Harrist v. Spencer-Harris Tool Co.*, 244 Miss. 84, 140 So.2d 558, 562 (1962)). Indeed, if the law required suppliers to warn of all obvious dangers inherent in a product, "[t]he list of foolish practices warned against would be so long, it would fill a volume." *Kerr v. Koemm*, 557 F.Supp. 283, 288 n. 2 (S.D.N.Y.1983).

Here, the dangers inherent in the Hobart grinder were sufficiently "patent and obvious" that no additional warning from Hobart was legally required. *Cf. McPhail v. Municipality of Culebra*, 598 F.2d 603 (1st Cir.1979) (danger involved in sailing a boat with an aluminum mast into a power line was "patent and obvious"). Hobart had good reason to believe that PSI understood the dangers involved in placing a hand into the grinder's feed opening. Indeed, PSI told both Flagg and Hobart that it would install safety devices. Of course, sometimes a supplier should warn a third person who might use the machine, even if the buyer knows of the danger. *See Restatement, supra,* § 388, comment n. Consider, for example, the case of a supplier who sells a shotgun to an adult buyer, knowing that the buyer intends to give the gun to his five-year-old child who would be unlikely to appreciate the gun's dangerousness. But this is not such a case, for the defendants here had no reason to believe that PSI's employees would not be equally well aware of the machine's obvious dangers. Any doubt on this score is eliminated by the fact that Hobart in fact *did* place warn-

ings on the grinder to alert users like Plante. One of the warnings had, in fact, been scratched off, apparently after delivery to PSI, but Plante is not here claiming that defendants mounted these warnings improperly, *see id.* comment *1.* Rather, Plante claims that defendants should have provided some *additional* warnings. And, like the district court, we do not see how one can reasonably say that defendants were negligent in failing to furnish even more warnings about the dangers of defeating Hobart's safety devices, or the dangers of using hands instead of the stomper to unclog the grinder.

Second, we do not see how one could reasonably conclude that any such additional warnings would have made a difference; defendants' failure to supply them could not have 'caused' the accident. The evidence at trial showed that Plante and PSI *in fact* understood the relevant dangers. PSI promulgated specific safety regulations forbidding its employees to use their hands to clean the grinders; Plante testified that he recognized the danger involved in sticking one's hand into the feed of a running grinder. What would additional warnings have told them that they did not already know, or that would have made any difference? "It seems superfluous to require a manufacturer to warn a user of the danger of using a machine without a safety device where the user is fully conscious of such danger in the absence of a safety device." *Ward v. Hobart Manufacturing Co.,* 450 F.2d at 1188. *See also Vroman v. Sears, Roebuck & Co.,* 387 F.2d 732, 735 (6th Cir.1967) (where plaintiff already knew of danger, seller's or manufacturer's breach of duty to warn could not have been proximate cause of accident); *Kerr v. Koemm,* 557 F.Supp. at 286 (where buyer appreciated danger, manufacturer's failure to warn him was not a proximate cause of injury).

Our effort to determine, in light of the record, what a reasonable juror might reasonably find thus leads us to conclude that Hobart cannot be held liable for failing to furnish additional warnings. *See Sowles v. Urschel Laboratories, Inc.,* 595 F.2d 1361, 1366 (8th Cir.1979) (rejecting "duty to

warn" liability where evidence showed that plaintiff "knew that placing one's hand in a running dicer was dangerous" and disregarded employer regulations setting out procedure to insure that machine was properly turned off). Our conclusion, moreover, is confirmed by Maine's case law. In *Cuthbertson v. Clark Equipment,* 448 A.2d 315 (Me.1982), the Supreme Judicial Court of Maine considered a tort case brought by the widow of an employee who was killed when the front-end loader he was operating overturned. Plaintiff sought recovery from the distributor alleging in part that the distributor had failed to properly warn of the danger of roll-over. The Court rejected this theory, stating that since the employer (who bought the loader) "already knew of the danger of rollover ... there could be no causal connection between a failure to warn and the injury which ensued." 448 A.2d at 319–20. The only difference we can find between *Cuthbertson* and the case before us is one that *dis* favors the plaintiff: here, the employee/victim, as well as the employer/equipment purchaser, was aware of the dangers presented by the machinery.

For these reasons, the judgment of the district court in favor of Hobart is

*Affirmed.*