Ann C. HOUSE, individually and as personal representative of the Estate of Freddie Floyd House, Plaintiff, Respondent, and Cross–Petitioner,

v.

ARMOUR OF AMERICA, INC., a California corporation; Lawco Police Supply, a Utah corporation; E.I. DuPont de Nemours, a Delaware corporation, and John Does III through XX, Defendants, Petitioners, and Cross–Respondents.

No. 950088.

Supreme Court of Utah.

Dec. 13, 1996.

Charles P. Sampson, H. Michael Drake, Paul M. Simmons, Stewart M. Hanson, Jr., Salt Lake City, for plaintiff, respondent, and cross–petitioner.

David B. Watkiss, David K. Watkiss, Carolyn Cox, Salt Lake City, for Armour and DuPont.

Tim Dalton Dunn, J. Rand Hirschi, Salt Lake City, for Lawco.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

DURHAM, Justice:

We granted certiorari in this products liability case to review the Utah Court of Appeals' decision in *House v. Armour of America, Inc.*, 886 P.2d 542 (Ct.App.1994), *cert. granted,* 899 P.2d 1231 (Utah 1995), reversing summary judgment in favor of defendants Armour of America, Inc. (Armour), and Lawco Police Supply (Lawco) and affirming summary judgment for defendant E.I. DuPont de Nemours (DuPont). Defendants Armour and Lawco claim that the court of appeals erred in finding that material issues of fact remained as to (1) whether defendants owed a duty to the deceased, Lt. Fred Floyd House, to warn him about the limitations of his body armor, (2) whether they satisfied this duty, and (3) whether their possible breach of this duty caused Lt. House's death. Plaintiff Ann C. House cross-petitions, claiming that the court of appeals erred in finding that defendant DuPont did not owe a duty to warn Lt. House of his vest's limitations. We agree with the court of appeals on all issues and affirm.

## I. FACTS

The facts of this case are detailed in the court of appeals' opinion in *House v. Armour of America, Inc.*, 886 P.2d at 545–47. We briefly summarize them here. Lt. House was a corrections officer for the Utah State Department of Corrections and the "point man" for one of the Department's two Special Weapons and Tactics (SWAT) Teams formed in 1980. The point man is the team member who takes the lead position in any tactical situation. In January 1988, Lt. House's SWAT team was called to assist federal and state law enforcement agencies during a siege of a family compound in Marion, Utah. On January 28, 1988, while carrying out an arrest plan designed by the FBI, Lt. House was fatally shot by a ".30 caliber steel-jacketed round fired from a Plainfield carbine rifle" by one of the family members. *House*, 886 P.2d at 546. When he was killed, Lt. House was wearing a body armor vest the SWAT team had purchased in 1981. Although his vest contained hard ceramic inserts which upgraded its stopping capabilities,[1] the bullet struck the nonceramic inside edge of the hard armor chest panel and then penetrated through the soft-body portion of the vest, causing Lt. House's death.

Ann House, Lt. House's widow, brought this products liability action against defendants Lawco, the distributor of the vest, Armour, the manufacturer of the vest, and DuPont, the manufacturer of KEVLAR®, the fiber woven into the ballistic fabric used in the body armor vest. She claimed that defendants breached their duty of care by failing to adequately warn Lt. House of the limitations and capabilities of his body armor.[2] Specifically, she argued that defendants should have warned him that his vest would not resist rifle fire.

At the trial level, defendants moved for summary judgment, which the trial court granted after finding either that defendants did not have a duty to warn, that they satisfied any duty they may have had, or that any breach of duty did not cause Lt. House's death. On appeal, the court of appeals reversed and remanded as to Lawco and Armour but affirmed the trial court's finding that DuPont did not owe a duty to warn.

## II. ANALYSIS

■ Summary judgment is appropriate only when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Utah R.Civ.P. 56(c). Thus, "because summary judgment is granted as a matter of law rather than fact, we review the legal conclusions of both the trial court and the court of appeals for correctness." *Butterfield v. Okubo*, 831 P.2d 97,

---

1. The body armor of the other SWAT team members did not contain the ceramic inserts; it is generally referred to in the industry as soft-body armor.

2. Mrs. House also raised a breach of warranty claim below. However, since it was not raised before this court, we do not address it here.

102 (Utah 1992) (citing *Ward v. Richfield City,* 798 P.2d 757, 759 (Utah 1990); *Division of Consumer Protection v. Rio Vista Oil, Ltd.,* 786 P.2d 1343, 1347 (Utah 1990); *CECO Corp. v. Concrete Specialists, Inc.,* 772 P.2d 967, 969 (Utah 1989); *Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988)).

### A. Duty to Warn

■ The court of appeals correctly stated that under Utah law, a manufacturer may be held strictly liable for any physical harm caused by its failure to provide adequate warnings regarding the use of its product. *House,* 886 P.2d at 547; *see* Restatement (Second) of Torts § 402A & cmt. j (1965).[3] Where a manufacturer "knows or should know of a risk associated with its product," the absence or inadequacy of warnings renders that product "unreasonably dangerous," subjecting the manufacturer to strict liability. *House,* 886 P.2d at 547 (citing *Grundberg v. Upjohn Co.,* 813 P.2d 89, 97 (Utah 1991)).

Defendants argue that they did not have a duty to provide warnings about the limitations of Lt. House's vest because (1) the dangers associated with using body armor are open and obvious, and (2) Lt. House was a member of a knowledgeable and sophisticated group that knows the capabilities and limitations of armor vests. The court of appeals reversed as to both of these issues, holding that genuine questions of material fact exist, precluding a finding that defendants owed no duty as a matter of law. *Id.* at 648–50. We agree.

### 1. The Open and Obvious Danger Rule

■ Defendants initially argue that the court of appeals erred in failing to find that

because the hazards connected with using body armor are open and obvious, defendants did not have a duty to warn Lt. House about the limitations of his vest. We agree with the court of appeals' ultimate conclusion that a genuine issue of material fact exists as to whether the relevant danger to Lt. House— that his vest would not resist certain high-velocity ammunition—was open and obvious to a reasonable user. However, because the court of appeals' analysis may suggest that Utah has "abandoned" the open and obvious danger rule in all circumstances,[4] we must clarify.

■ Most jurisdictions adopting the position taken in section 402A of the Restatement of Torts have held that if the danger posed by the use of a product is "generally known and recognized," then the seller is not required to warn about that danger. *See* Restatement, § 402A cmt. j;[5] *see also* Allan E. Korpela, Annotation, *Failure to Warn as Basis of Liability Under Doctrine of Strict Liability in Tort,* 53 A.L.R.3d 239, 257–59 (1973 & Supp.1994). These jurisdictions assert:

> Where the risks of the product are discernible by casual inspection, such as the danger that a knife can cut, or a stove burn, the consumer is in just as good a position as the manufacturer to gauge the dangers associated with the product, and nothing is gained by shifting to the manufacturer the duty to warn.

*Laaperi v. Sears, Roebuck & Co.,* 787 F.2d 726, 730–31 (1st Cir.1986); *see also Elliott v. Brunswick Corp.,* 903 F.2d 1505, 1506–07 (11th Cir.1990) (danger of rotating boat propeller sufficiently obvious to preclude imposi-

---

**3.** This court expressly adopted section 402A of the Restatement in *Ernest W. Hahn, Inc. v. Armco Steel Co.,* 601 P.2d 152, 156–58 (Utah 1979). Since the full text of section 402A is quoted in the court of appeals' decision, we do not repeat it in this opinion. Moreover, because the court of appeals comprehensively set forth the basis for liability in failure to warn cases, we explain it here only summarily.

**4.** The first argument made by defendants in their brief is headed "THE COURT OF APPEALS ERRED IN *ABANDONING THE OPEN AND OBVIOUS DANGER RULE* WHICH OBVIATES ANY DUTY TO WARN IN A PRODUCT LIABILI-

TY ACTION AND IN HOLDING THAT A PRODUCT'S OBVIOUS DANGER IS ONLY A FACTOR TO BE ASSESSED IN DETERMINING COMPARATIVE FAULT." (Emphasis added.)

**5.** Comment j provides in part:

> In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use....
>
> But a seller is not required to warn ... when the danger, or potentiality of danger, is generally known and recognized.

tion of liability upon manufacturer of outboard motor); *Plante v. Hobart Corp.*, 771 F.2d 617, 620 (1st Cir.1985) (placing one's hand into blades of potato chopper); *Sherk v. Daisy–Heddon, Div. of Victor Comptometer Corp.*, 498 Pa. 594, 450 A.2d 615, 618–20 (1982) (firing BB gun at another at close range).

The court of appeals noted that with the passage of Utah's comparative fault statute, subsequent Utah court decisions have departed from the strict all-or-nothing rule. *See Mulherin v. Ingersoll–Rand Co.*, 628 P.2d 1301, 1303 (Utah 1981) (holding that plaintiff's misuse of product in strict products liability case was not complete bar to recovery); *Donahue v. Durfee*, 780 P.2d 1275, 1279 (Utah.Ct.App.1989) (abolishing "open and obvious" danger rule in landowner negligence actions). The court declared that in light of this precedent and in accord with other jurisdictions, "the presence of an 'open and obvious' danger is merely one factor for the trier of fact to consider when assessing the liability of the defendant in a strict liability case—it does not operate as a complete bar to the injured party's recovery." *House*, 886 P.2d at 548 (citing, among others, *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1104 (10th Cir. 1991)).

Many jurisdictions have found that enabling a manufacturer to escape liability because the product's dangerousness is patent encourages manufacturers to continue to design "bad" products as long as they make the danger obvious. Hence, these jurisdictions have stated, " 'The law, we think, ought to discourage misdesign rather than encouraging it in its obvious form.' " *Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1283 (Wyo.1983) (quoting *Palmer v. Massey–Ferguson, Inc.*, 3 Wash.App. 508, 476 P.2d 713, 718 (1970)).

> "[I]f the product is a carrot-topping machine with exposed moving parts, or an electric clothes wringer dangerous to the limbs of the operator, and if it would be feasible for the maker of the product to install a guard or safety release, it should be a question for the jury whether reasonable care demanded such a precaution, though its absence is obvious."

*Id.* (quoting 2 Harper & James, *The Law of Torts* § 28.5, at 1543 (1956)). Although we find no fault with this reasoning, we do not believe that this concern is equally applicable to products which, because of their nature and intended use, cannot be economically designed in a safe manner, such as knives. Moreover, we find persuasive the reasoning of the United States Court of Appeals for the First Circuit: "If a manufacturer had to warn consumers against every such obvious danger inherent in a product, '[t]he list of obvious practices warned against would be so long, it would fill a volume.' " *Laaperi*, 787 F.2d at 731 (quoting *Plante v. Hobart Corp.*, 771 F.2d 617, 620 (1st Cir.1985)). Accordingly, we conclude that a "manufacturer cannot be held liable for injuries which result from patent dangers, inherent in the product, completely within the cognition of a reasonable user, and incapable of being economically alleviated." *Wheeler v. John Deere Co.*, 935 F.2d 1090, 1104 (10th Cir.1991).

However, as noted by the court of appeals, even though a product may contain a patent danger which cannot be economically alleviated, the "product may still be unreasonably dangerous if the hazards or risks associated with its use were not such that they should have been realized by a reasonable user or consumer of the product." *House*, 886 P.2d at 548. The Restatement provides that a product is unreasonably dangerous if "[t]he article sold [is] dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Restatement (Second) of Torts § 402A cmt. i (1965); *see also Wheeler*, 935 F.2d at 1104 (holding that although danger of placing limb in running combine was open and obvious, defective design of combine that increased chance of accidental injury made combine more dangerous than expected).

With these principles in mind, we must determine whether the danger posed to Lt. House was open and obvious as a matter of law. We agree with defendants that Lt. House's body armor contained an open and obvious hazard which could not be economically alleviated; it did not provide complete

coverage of vulnerable body parts. Thus, defendants did not have to warn Lt. House that he could still be injured or killed by ammunition striking uncovered areas. *See Linegar v. Armour of America, Inc.,* 909 F.2d 1150, 1154 (8th Cir.1990) (holding that defendant had no duty to warn of limited nature of protection offered by bullet resistant vest). However, the bullet that killed Lt. House did not strike an exposed area. The bullet hit his body armor, which failed to contain it and thus shield Lt. House from harm. If any reasonable user of Lt. House's body armor would have believed that the vest could stop a bullet fired from a high-caliber rifle, when in reality it would not, then the product would fail to meet the reasonable expectations of its users and thus would pose an unreasonable danger requiring an adequate warning. After reviewing the facts set forth in the record, we cannot say as a matter of law that the limitations of Lt. House's vest were open and obvious to a reasonable user of that vest. Therefore, the court of appeals correctly held that "there are material issues of fact sufficient to preclude the trial court's grant of summary judgment." *House,* 886 P.2d at 549.

## 2. The Sophisticated User

■ Defendants next argue that even if the danger of rifle fire was not open and obvious, the court of appeals erred in holding that whether Lt. House was a sophisticated user and thus knew or should have known of the limitations of his vest is "for the jury to decide." *Id.* at 550. We agree with the court of appeals, however, that the facts are insufficient to find as a matter of law that Lt. House was a sophisticated user and that the group to which he belonged knew about the limitations of his vest.

■ To avoid liability because the injured party was a sophisticated user, defendants must show that the "ultimate user possesses special knowledge, sophistication, or expertise" to such an extent that "the user's knowledge of the danger is equivalent to prior notice." *Id.* at 549 (citing *Billiar v. Minnesota Mining & Mfg. Co.,* 623 F.2d 240, 243 (2d Cir.1980)). As the court of appeals noted, defendants need not show that Lt.

House actually knew about the danger but that the "community" to which Lt. House belongs "generally knows" about the danger. *Id.* (citing *Jackson v. Coast Paint & Lacquer Co.,* 499 F.2d 809, 812 (9th Cir.1974)). In other words, to sustain a conclusion that no duty was owed to the user because of his professional status, the court must "find the record evidence to be undisputed that the user actually knew of the danger or that, based on the user's special expertise and the circumstances of the transaction, the supplier reasonably could have believed that he knew of the danger." *Halter v. Waco Scaffolding & Equipment Co.,* 797 P.2d 790, 794 (Colo.Ct. App.1990).

Defendants argue that Lt. House was "a highly and specially trained prison officer and a weapons instructor who ... had investigated the threat protection levels afforded by soft and hard body armor and determined the protection level" and thus was "clearly knowledgeable regarding the characteristics of soft body armor vests." However, after reviewing the record, we agree with the court of appeals that there was insufficient evidence "that any of the extensive training completed by Lt. House or other members of the SWAT Team involved the use and capabilities of body armor." *House,* 886 P.2d at 550. Moreover, Lt. House's SWAT team only started looking into purchasing and using body armor in 1980. Many team members testified that their initial investigation into the different types of body armor—which led to their purchase of the Armour vests in 1981—was conducted informally and haphazardly. Consequently, when Lt. House was killed, the team not only lacked knowledge about the capabilities of body armor, but also lacked experience in using the product. *See Buettner v. R.W. Martin & Sons,* 47 F.3d 116, 120 (4th Cir.1995) (finding that injured party was sophisticated user where he had fourteen years of experience in using commercial equipment); *Lloyd v. John Deere Co.,* 922 F.2d 1192, 1196 (5th Cir.1991) (twenty-seven years of experience with tractors made plaintiff sophisticated user).

Ultimately, although many of the SWAT team members stated that they believed their soft-body armor would not contain rifle

fire, there is enough disputed evidence to prevent us from concluding as a matter of law that the capabilities and limitations of Lt. House's vest were generally known by all of Lt. House's SWAT team. We therefore affirm the court of appeals.

### B. Satisfaction of the Duty to Warn

We also agree with the court of appeals that in light of the evidence in the record, a genuine issue of fact exists as to whether (1) the information on the label attached to Lt. House's vest provided an adequate warning and/or (2) Lt. House received an Armour brochure which adequately described each vest's capabilities and limitations. First, defendants' argument that the label "specifically advised" that the vest would not contain certain rounds is without support in the record. The label on Lt. House's vest contained the following information:

THIS VEST WILL CONTAIN

44 MAG. 240 GR. (6″ BBL)

U.S.A. 9mm 124 GR. FMJ
357 MAG. 125 GR. SJHP (6″ BBL)

22 MAG. (6″ BBL) 38 CAL.
00 BUCKSHOT

NOT FOR A.P. ROUNDS

ARMOUR OF AMERICA

P.O. BOX 1405

BEVERLY HILLS, CA 90213

DO NOT MACHINE WASH
OR DRY CLEAN.

CLEAN WITH DAMP CLOTH
AND SMALL
AMOUNT OF SOAP.

Looking at all disputed facts and inferences, reasonable minds could reach different results on whether this information provided an adequate warning. The court of appeals succinctly set forth the necessary requirements for an adequate warning. We therefore adopt its analysis and agree that this issue

"presents a question of fact, to be resolved by the trier of fact." House, 886 P.2d at 551 (citing DeBry v. Valley Mortgage Co., 835 P.2d 1000, 1004 (Utah.Ct.App.1992)).

Second, after reviewing the testimony presented at the hearing and in depositions, we also agree with the court of appeals that "it is disputed whether Lt. House received the Armour information booklet or brochure. Moreover, no member of the SWAT Team could recall, specifically, whether they ever saw such a brochure." Id. Therefore, we cannot hold that as a matter of law defendants satisfied their duty to warn.

### C. Causation

Defendants finally argue that the court of appeals erred in (1) allowing a "heeding presumption" to assist plaintiff in meeting her burden on the issue of causation and (2) concluding that there was a material issue of fact regarding whether defendants' failure to warn was the proximate cause of Lt. House's death.

In any failure to warn claim, a plaintiff must show that the failure to give an adequate warning in fact caused the injury; i.e., that had warnings been provided, the injured party would have altered his use of the product or taken added precautions to avoid the injury. See Barson v. E.R. Squibb & Sons, Inc., 682 P.2d 832, 836–37 (Utah 1984). But " 'if the event which produced the injury would have occurred regardless of the defendant's conduct,' " then the failure to provide a warning is not the proximate cause of the harm and the plaintiff's claim must fail. House, 886 P.2d at 552 (quoting Lunt v. Mount Spokane Skiing Corp., 62 Wash.App. 353, 814 P.2d 1189, 1194 (1991)). Defendants contend that plaintiff cannot show that Lt. House would have altered his conduct had a warning been given because (1) Lt. House did not know that he would be faced with rifle fire; (2) the arrest plan minimized any exposure to gunfire, and Lt. House would therefore have been in the same position no matter what he believed about the capabilities of his vest; and (3) no one would intentionally expose oneself to any type of fire because of the inherent limitations in the

coverage of any body armor. The court of appeals, however, held that on the basis of statements by members of the SWAT team about their and Lt. House's expectations of his vest and by applying a rebuttable presumption that Lt. House "would have 'heeded' or followed an adequate warning had one been provided," material issues of fact remained "regarding whether appellees' failure to warn was the proximate cause of Lt. House's death." *Id.* at 552–53. Although the court of appeals did not specifically determine whether Mrs. House produced sufficient evidence from which a jury could infer that Lt. House would have heeded a warning, we agree with the court of appeals that the application of a "heeding presumption" was appropriate under these circumstances.

The court of appeals, following the majority of jurisdictions, held that "in cases in which it cannot be demonstrated what the plaintiff would have done had he or she been adequately warned, the plaintiff should be afforded a rebuttable presumption that he or she would have followed an adequate warning had one been provided." *Id.* at 553. In reaching this result, the court of appeals relied both on the position stated in the Restatement (Second) of Torts [6] and on policies underlying strict liability for unreasonably dangerous products. We find their rationale to be persuasive: " 'The heeding presumption ... serves to reinforce the basic duty to warn—to encourage manufacturers to produce safer products, and to alert users of the hazards arising from the use of those products through effective warnings.' " *Id.* (quoting *Coffman v. Keene Corp.,* 133 N.J. 581, 628 A.2d 710, 718 (1993)).

Defendants argue, however, that a heeding presumption is inappropriate in cases where the danger is unavoidable rather than preventable. *See Thomas v. Hoffman–LaRoche, Inc.,* 949 F.2d 806, 813–14 (5th Cir.1992) (holding that heeding presumption should apply only to preventable risk warnings where there is choice of using product safely or unsafely, not to unavoidable risk warnings where choice is not between safe and unsafe use but between using or not using product). However, the injury in *Thomas* occurred when the plaintiff suffered numerous seizures after taking the medication Accutane. Seizures were found to be a side effect of Accutane that only a few users suffered. The Fifth Circuit held that a heeding presumption was not appropriate under these circumstances because it could not be presumed that if the doctor or patient had known of this risk, they would have decided not to prescribe or take the medication. *Id.*

The facts in the instant case are different. If Lt. House had been warned about the specific limitations of his vest, then, unlike the medication user, he could have taken other precautions besides foregoing the use of his vest. For example, absent adequate warnings, Lt. House may have felt more confident than he should have and may have taken additional risks which, had he known the true limitations of his vest, he would have minimized or avoided. Consequently, we cannot say that the danger of a rifle bullet's penetrating Lt. House's vest was a truly unavoidable risk.

Defendants, however, argue that even if we do accept and apply a heeding presumption, they have proffered enough evidence to rebut this presumption as a matter of law. We disagree. Defendants first argue that neither Lt. House nor the arrest plan anticipated rifle fire. However, this is at least a disputed issue of fact which must be resolved by a jury. The court of appeals found that "the risk of encountering rifle fire was known." *House,* 886 P.2d at 553 n. 7. Even if rifle fire was not expected, this still does not refute the notion that Lt. House generally would have acted more cautiously when actually exposed to fire.

Second, defendants argue that because the arrest plan minimized "to the greatest extent possible" any exposure to hostile fire, any

---

**6.** The court of appeals explained that comment j to section 402A of the Restatement of Torts provides that where a seller gives a warning, that seller may " 'reasonably assume that it will be read and heeded,' " thus fulfilling their duty of providing a safe product. *House,* 886 P.2d at 552 (quoting Restatement (Second) of Torts § 402A cmt. j (1965)). As a result, many jurisdictions have held that this presumption should also work in the favor of the buyer or user where a warning is not given. *Id.*

warning about the limitations of Lt. House's vest would not have made any difference in the arrest plan or in Lt. House's actions. We disagree. Although the arrest plan may have tried to minimize exposure, this does not show that Lt. House could not have also taken added precautionary measures. As plaintiff points out, Lt. House could have changed his posture slightly to further minimize exposure. Moreover, we cannot say that if the SWAT team had known of the vest's limitations, a different arrest plan would not have been formulated.

Finally, we likewise cannot agree with defendants' assertion that because Lt. House knew of the limited *coverage* of the vest, he must be presumed not to have intentionally exposed himself to any gun fire in the first place; any warnings regarding rifle fire, they argue, would not have changed his actions in any case. In light of the differing testimony regarding Lt. House's perception of his vest's capabilities, we cannot decide as a matter of law that he would not have changed his conduct had he known the actual limitations of the vest. We agree with the court of appeals that there are too many disputed material issues of fact for this question to be resolved by summary judgment.

### D. Defendant DuPont's Duty and Opportunity to Warn

■ Although the court of appeals remanded the case for further proceedings as against defendants Lawco and Armour, it affirmed the trial court's grant of summary judgment in favor of defendant DuPont. In reaching this conclusion, the court of appeals relied primarily on case law holding that a "bulk supplier of raw materials which are not themselves inherently dangerous has no duty to warn ultimate users of the manufactured product." *House,* 886 P.2d at 554 (citing, among others, *Veil v. Vitek, Inc.,* 803 F.Supp. 229, 234–37 (D.N.D.1992) (bulk supplier of raw material not inherently dangerous has no duty to warn consumer of finished product)). Accordingly it found that because the undisputed facts showed that DuPont merely

supplied the KEVLAR fibers which would then be "woven into ballistic fabrics according to the design specifications of the individual vest manufacturers," DuPont was "solely a bulk supplier of KEVLAR" and thus "had no duty [or] opportunity to warn the ultimate vest user about the levels of protection afforded by vests woven from KEVLAR." *Id.* at 553–54.

Plaintiff, however, claims that this holding constituted error because DuPont was more than a mere bulk supplier of the KEVLAR; it was actively engaged in testing, advertising, and promoting the body armor made out of KEVLAR. In support of her argument, plaintiff refers to (1) DuPont's involvement in the Personal Protective Armor Association (PPAA), which, among other things, developed labeling and testing standards for vest manufacturers; (2) DuPont's funding of studies, including three conducted by The Brand Consulting Group to study police officers' attitudes and their understanding of soft-body armor; and (3) DuPont's funding of promotional advertising such as a poster depicting a bullet bouncing off the chest of a super hero. However, the facts show that DuPont did not substantially engage in any of these activities until the mid–1980s, a few years after Lt. House received his vest.[7] Thus, at the time Lt. House received his vest, DuPont did not have an opportunity or any duty to warn of the limitations of the Armour vests. As a result, we hold that the court of appeals correctly affirmed the trial court's grant of summary judgment as to DuPont.

### III. CONCLUSION

We affirm the court of appeals' reversal of summary judgment for defendants Lawco and Armour, finding that material issues of fact exist as to whether defendants owed a duty to Lt. House to warn him about the limitations of his body armor, whether they satisfied this duty, and whether their possible breach of this duty caused Lt. House's death. We also agree with the court of appeals' affirmance of summary judgment for

---

7. Although in 1981 DuPont may have conducted some initial testing on the KEVLAR-based vests both as to capability and durability, such mini-

mal involvement could not impose a duty upon DuPont to warn the ultimate consumer that the vest would not contain rifle fire.

defendant DuPont, holding that DuPont was merely a bulk supplier of a raw material not in itself inherently dangerous.

STEWART, Associate C.J., and PARK, J., concur in Justice DURHAM's opinion.

RUSSON, J., having disqualified himself, does not participate herein; PARK, D.J., sat.

HOWE, Justice, concurring and dissenting:

As a general proposition, I agree with the majority that the court of appeals correctly stated that

> in cases in which it cannot be demonstrated what the plaintiff would have done had he or she been adequately warned, the plaintiff should be afforded a rebuttable presumption that he or she would have followed an adequate warning had one been provided.

*House v. Armour of Am., Inc.*, 886 P.2d 542, 553 (Utah.Ct.App.1994). Such a presumption is founded on the human experience that if a person is properly warned about the dangers associated with the use of a product, he or she will generally heed the warning.

However, that presumption has no application in the instant case where we hold that there is a disputed question of fact as to whether Lt. House or the arrest plan anticipated rifle fire from the Singer house. Obviously, if rifle fire was not anticipated, a warning that the vest would not contain rifle fire might well not have been heeded. Certainly, it cannot be "presumed" that such a warning would have resulted in the SWAT team's changing its plans. To the contrary, any "presumption" ought to be that any such warning would be disregarded because persons generally do not heed warnings about dangers to which they do not anticipate being exposed.

ZIMMERMAN, C.J., concurs in Justice HOWE's concurring and dissenting opinion.