2003 UT App 240

**John D. HALE, Plaintiff and Appellant,**

v.

**Kurt BECKSTEAD and John Does
I through V, Defendants and
Appellees.**

**No. 20020196–CA.**

Court of Appeals of Utah.

July 10, 2003.

Aaron J. Prisbrey, St. George, for Appellant.

Bryan J. Pattison and Brent M. Brindley, Durham, Jones & Pinegar, St. George, for Appellees.

Before BILLINGS, Associate P.J., and ORME, and THORNE, Judges.

## OPINION

BILLINGS, Associate Presiding Judge:

¶ 1 John Hale appeals the district court's grant of summary judgment to Kurt Beckstead. We affirm.

## BACKGROUND

¶ 2 "When reviewing a grant of summary judgment, we evaluate the evidence and all reasonable inferences fairly drawn from that evidence in a light most favorable to the party opposing summary judgment." *Fishbaugh v. Utah Power & Light,* 969 P.2d 403, 405 (Utah 1998) (quotations and citation omitted). Accordingly, we recite the facts as presented by Hale, although there is no real dispute as to the facts.

¶ 3 In 1996, Beckstead began construction of a house on land he owned in Santa Clara, Utah. The house was to be the primary residence for Beckstead and his family. Beckstead acted as his own general contractor in the construction of the house.

¶ 4 Beckstead hired Hale to paint the interior of the house. Beckstead did not exercise control over the day-to-day performance of the painting. In fact, at the time Hale's injuries occurred, Beckstead was out of town.

¶ 5 The house was under construction when Hale performed the painting work. Accordingly, a railing had not yet been installed on the second floor balcony. While painting the interior, Hale inadvertently stepped off the second-floor balcony and fell to the first floor below, sustaining injuries.

¶ 6 Hale filed a complaint against Beckstead alleging negligence, violation of the Occupational and Safety Health Act (OSHA), and premises liability. Subsequently, Beckstead moved for summary judgment.

¶ 7 The trial court granted Beckstead's motion and entered summary judgment for Beckstead. The trial court found that "[Hale] fell while on [Beckstead's] premises as a business visitor or invitee, ... and that any danger posed to [Hale] by the condition of [Beckstead's] partially-completed home was open and obvious to [Hale]." The trial court thus held that "[Beckstead] had no duty of care toward [Hale]." Hale appeals.

## ISSUE AND STANDARD OF REVIEW

¶ 8 Hale argues the district court erred in holding, as a matter of law, that Beckstead owed no duty of care to Hale. "Because the determination of whether summary judgment is appropriate presents a question of law, we accord no deference to the trial court's decision and instead review it for correctness." *DOIT, Inc. v. Touche, Ross & Co.,* 926 P.2d 835, 841 (Utah 1996). Also, "the issue of 'whether a "duty" exists is a question of law' which we review for correctness." *Fishbaugh v. Utah Power & Light,* 969 P.2d 403, 405 (Utah 1998) (quoting *Weber v. Springville City,* 725 P.2d 1360, 1363 (Utah 1986)).

## ANALYSIS

### I. Restatement (Second) of Torts and Landowner Duty

¶ 9 Hale argues the district court erred in holding that Beckstead owed no duty of care to protect Hale from the danger posed by the

unprotected balcony. In *English v. Kienke*, 848 P.2d 153, 156 (Utah 1993), the Utah Supreme Court suggested that Utah follows the Restatement (Second) of Torts (1965) (the Restatement) with regard to duty in cases of landowner liability. In that case, the supreme court employed Restatement sections 328E, 332, and 343 to define the status of the plaintiff workman as a " 'business visitor' " and the landowner as a " 'possessor of land.' " *English*, 848 P.2d at 156 (quoting the Restatement sections 328E, 332, 343). The *English* court then quoted section 343 of the Restatement in its entirety and provided the following analysis:

> Sections 343 *and 343A* of the Restatement impose on a possessor of land the duty to warn an invitee about two general types of hazards: (1) those that are present on the land when the invitee enters which the possessor should expect the invitee will not discover or realize, and (2) those that the possessor creates after the invitee's entry[.]

*English*, 848 P.2d at 156 (emphasis added). Because the plaintiff invitee in *English* "created the hazard which led to his death," the supreme court did not apply sections 343 and 343A in that case. *Id.* However, the *English* court clearly indicated that a landowner's duty to an invitee in Utah is set out in sections 343 and 343A of the Restatement. *See id.* at 156–57.[1]

¶ 10 Indeed, in *Laws v. Blanding City*, our most recent case involving an open and obvi-

---

1. Historically, the Utah Supreme Court has applied the common law open and obvious danger rule in landowner liability cases. *See, e.g., Moore v. Burton Lumber & Hardware Co.*, 631 P.2d 865, 868 (Utah 1981) ("It has long been held that a property owner has no obligation to warn an invitee of dangers which are known to the invitee or which are so obvious and apparent that he may reasonably be expected to discover them."); *Ellertson v. Dansie*, 576 P.2d 867, 868 (Utah 1978) ("Where there is a dangerous condition on one's property, which is just as observable to an invitee as to the owner, the owner has no duty to warn or to protect the invitee except to observe the universal standard of reasonable care under the circumstances.").

   However, in *Donahue v. Durfee*, this court announced the abandonment of the open and obvious danger rule in Utah. *See* 780 P.2d 1275, 1279 (Utah Ct.App.1989), *cert. denied*, 789 P.2d 33 (Utah 1990). We held that by "establishing a comparative negligence system, the Utah Legislature has by necessary implication abolished the open and obvious danger rule as an absolute bar to an injured [invitee's] recovery." *Id.*

   However, we conclude that *Donahue* has since been overruled sub silento by our supreme court. *See House v. Armour of Am., Inc.*, 929 P.2d 340 (Utah 1996), *aff'g* 886 P.2d 542 (Utah Ct.App. 1994). In *House*, the supreme court granted certiorari to review this court's application of the law governing duty in a reversal of the district court's grant of summary judgment for a defendant manufacturer in a products liability case. *See* 929 P.2d at 342. Defendant argued that "the court of appeals erred in failing to find that because the hazards [were] open and obvious, defendant[ ] did not have a duty to warn" or otherwise protect the plaintiff. *Id.* at 343. While "agree[ing] with the court of appeals' ultimate conclusion that a genuine issue of material fact exist[ed] as to whether the relevant danger ... was open and obvious," the supreme court felt compelled to "clarify" our "suggest[ion] that Utah has 'abandoned' the open and obvious danger rule in all circumstances." *Id.* The referenced "suggestion" arose from our discussion of, inter alia, *Mulherin v. Ingersoll–Rand Co.*, 628 P.2d 1301, 1303 (Utah 1981) and *Donahue*, 780 P.2d at 1279 (Utah Ct.App.1989). *See House*, 886 P.2d at 548 (Utah Ct.App.1994).

   The supreme court found persuasive "the reasoning of the United States Court of Appeals for the First Circuit," wherein that court opined: " 'If a manufacturer had to warn consumers against every such obvious danger inherent in a product, "the list of obvious [dangers] would be so long, it would fill a volume." ' " *Id.* at 344 (quoting *Laaperi v. Sears, Roebuck & Co.*, 787 F.2d 726, 731 (1st Cir.1986) (quoting *Plante v. Hobart Corp.*, 771 F.2d 617, 620 (1st Cir.1985))). Our supreme court went on to "determine whether the danger posed to [plaintiff] was open and obvious as a matter of law." *Id.* After applying the open and obvious danger rule to the facts before it, the supreme court could not "say as a matter of law that the [hazard] was open and obvious [and] [t]herefore, the court of appeals correctly held that there [were] material issues of fact sufficient to preclude the trial court's grant of summary judgment." *Id.* at 345 (quotations and citation omitted); *see also Golding v. Ashley Cent. Irrigation Co.*, 902 P.2d 142, 146 (Utah 1995) ("Under the [Utah Limitation of Landowner Liability] Act, a landowner's knowledge of a dangerous condition that is inherent in the use to which the land is put and is common, open, and obvious does not give rise to liability."); *Pratt v. Mitchell Hollow Irrigation Co.*, 813 P.2d 1169, 1173 (Utah 1991) (refusing to apply the "hidden trap" exception to canal owners immunity doctrine where "[t]he hazards .... are open and obvious, and ... inhere[nt] in the very existence of canals and ditches").

   Hence, we conclude the open and obvious danger rule remains viable in Utah law governing duty.

ous danger in the context of landowner liability, this court applied the open and obvious danger analysis of the Restatement sections 343 and 343A (Restatement approach). *See* 893 P.2d 1083, 1085 (Utah Ct.App.1995). In that case we held that "[t]he correct statement of the duty Defendant, a possessor of land, owed Plaintiff, an invitee, is contained in sections 343 and 343A of the Restatement." *Id.*

■ ¶ 11 Thus, we conclude the open and obvious danger rule, as outlined in sections 343 and 343A of the Restatement, is the applicable law in this case.[2]

### A. The Restatement Approach to the Open and Obvious Danger Rule

¶ 12 Section 343 of the Restatement provides:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against danger.

Restatement (Second) of Torts § 343. Hence, section 343 "impose[s] on a possessor of land the duty to warn an invitee about two general types of hazards: (1) those that are present on the land when the invitee enters which the possessor should expect the invitee will not discover or realize, and (2) those that

the possessor creates after the invitee's entry." *English v. Kienke*, 848 P.2d 153, 156 (Utah 1993).

¶ 13 Section 343A of the Restatement substantially clarifies the duty outlined in section 343 when the dangerous " 'condition is known to the invitee, or is obvious to him.' " *Laws v. Blanding City*, 893 P.2d 1083, 1085 (Utah Ct.App.1995) (citation omitted); *see also* Restatement (Second) of Torts § 343 cmt. a ("Section [343] should be read together with § 343A."). Section 343A(1) of the Restatement provides that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them[.]" Restatement (Second) of Torts § 343A(1).

■ ¶ 14 We agree with the district court that the danger in this case—the second-floor balcony, which lacked railings because construction at Beckstead's house was not yet completed—was "known or obvious" to Hale within the meaning of section 343A of the Restatement. Hale concedes the house was only partially constructed and the second-floor balcony was unprotected, exposing a drop of over six feet. The inherent risk of such a condition in a partially-constructed house is "apparent to and would be recognized by a reasonable man ... in [Hale's position as an experienced painting subcontractor] exercising ordinary perception, intelligence, and judgment." Restatement (Second) of Torts § 343A(1) cmt. b.

### B. Restatement Exceptions to the Open and Obvious Danger Rule

¶ 15 There are, however, significant exceptions to the open and obvious danger rule

---

2. Beckstead asks us to decide this appeal by applying the rules of liability for employers of independent contractors as outlined in the Restatement section 409, its companion sections, and the case of *Thompson v. Jess*, 1999 UT 22, 979 P.2d 322, which applies various sections of chapter 15 of the Restatement, including section 409. *See id.* at ¶ 13. Beckstead's reliance on these authorities is misplaced. *Thompson* dealt with issues of the "retained control" doctrine and the "peculiar risk" and "inherently dangerous work" doctrines under the Restatement sections 413, 426, and 427, *Thompson*, 1999 UT 22 at ¶ 11, 979 P.2d 322 (quotations omitted), issues not relevant to this appeal. More importantly,

*Thompson* contains no analysis with regard to the duty owed by a possessor of land to an invitee. *See id.* And while section 409 has some applicability with regard to the relationship between Beckstead and Hale (where Beckstead did not participate in or control the manner in which Hale performed the painting, such that Beckstead owed Hale no duty of care concerning the safety of the manner or method of performance Hale chose to implement), this analysis is not dispositive. As we discuss in detail below, Hale was a business visitor, an invitee on Beckstead's land—a status wholly separate from any status he may have had as an independent contractor, which no one disputes.

under the Restatement which can, in some cases, limit the protection the rule affords to landowners.[3] Section 343A(1) of the Restatement reads: "A possessor of land is not liable to his invitee for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Restatement (Second) of Torts § 343A(1). Comment f states further:

> There are ... cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection....

> Such reason to expect harm to the visitor from known or obvious dangers may arise, for example, where the possessor has reason to expect that the invitee's attention may be distracted, so that he will not discover what is obvious, or will forget what he has discovered, or fail to protect himself against it. Such reason may also arise where the possessor has reason to expect that the invitee will proceed to encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk.

*Id.* § 343A(1) cmt. f.

¶ 16 Accordingly, the dispositive issue before us is whether or not Beckstead should have anticipated that Hale would suffer injury despite the known and obvious danger posed by the unprotected balcony, either because Hale's interior painting required a deliberate encounter with the danger, or because Hale was likely to become distracted.

¶ 17 With regard to the deliberate encounter exception, *Laws v. Blanding City,* 893 P.2d 1083 (Utah Ct.App.1995), is instructive. In *Laws,* the city's invitee was injured after falling from a dumping platform at the city's landfill. *See id.* at 1084. Following a jury trial the invitee appealed the verdict in favor of the city. *See id.* This court reversed the jury verdict and remanded for a new trial, holding the district court failed to properly instruct the jury regarding the duty owed by the city to its invitees notwithstanding the known and obvious nature of the hazard posed by the dumping platform. *See id.* at 1085–86 (citing Restatement (Second) of Torts §§ 343A(1), 343A(1) cmt. f). We noted that because the appellant invitee lived outside the city's curbside trash pickup area, he was required by city ordinance to dispose of his trash himself using the dumping platform at the landfill. *See id.* at 1086. As such, the city "had a duty to protect [appellant invitee] because [the city] *should have known that a reasonable person would, recognizing the danger, nevertheless encounter it.*" *Id.* at 1086 (emphasis added); *see also* Restatement (Second) of Torts § 343A (1) cmt. f.

¶ 18 Unlike the appellant invitee in *Laws,* Hale was under no obligation by city ordinance or otherwise to encounter Beckstead's land at all, let alone the unprotected balcony from which he fell. Instead, Hale voluntarily entered the land to perform a freely negotiated painting contract for which he had expertise.

¶ 19 Case law from other jurisdictions that have adopted the Restatement approach under sections 343 and 343A is instructive and supports our approach. In *Sutherland v. Barton,* a powerful electric shock killed a worker at a job-site where machinery controls were being upgraded at a paper plant. *See* 570 N.W.2d 1, 2, 4 (Minn.1997). The

**3.** The existence of such exceptions illustrates that the open and obvious danger rule of sections 343 and 343A of the Restatement "avoid[s] the rigidity of the traditional common-law rule by permitting the courts to hold that a plaintiff's knowledge of the danger does not necessarily absolve the occupier of liability, and permit[s] a plaintiff to recover if it appears and is found that the risk was one which would not be anticipated or appreciated by the invitee, or where the [landowner] can and should anticipate that the dangerous condition will cause harm to the invitee notwithstanding its known or obvious danger." 62 Am. Jur. 2D *Premises Liability* § 157 (1990) (footnotes and citations omitted). Hence, the Restatement approach to the open and obvious danger rule is not necessarily the kind of "strict all-or-nothing rule" alluded to by our supreme court in *House,* 929 P.2d at 344.

fatal injury occurred while the worker was working on live electrical wiring that he and his fellow electricians at the project site knew "could be deadly." *Id.* at 3–4. There was no dispute at trial that "the danger was known and obvious to [the decedent worker]." *Id.* at 7. However, the appellant argued that the decedent worker's "only alternative to avoiding the risk of the live [wiring] was to forgo his employment." *Id.* The Supreme Court of Minnesota reinstated a grant of summary judgment in favor of the paper plant, holding that the paper plant "did not owe [the decedent worker] a duty to protect him from harm by [the] known and obvious danger" because: (a) the worker "had expertise as an electrician[,] . . . the exact reason [for which he was] hired"; (b) "[i]t was entirely reasonable for [the paper plant] to expect that [the worker] would take the necessary safety precautions"; and (c) the paper plant "had no reason to anticipate that [the worker] would proceed to encounter the danger of the live [wires] without taking the necessary safety precautions." *Id.* at 7–8.

¶ 20 Likewise, in this case, Hale contracted with Beckstead to paint the interior of a partially-constructed house containing an unprotected second-floor balcony—clearly a known or obvious danger. Hale held himself out to Beckstead as having expertise to complete the job—the very reason for which he was hired. As such, Beckstead could reasonably expect that Hale "would take the necessary safety precautions" and "had no reason to anticipate that [Hale] would proceed to encounter the [unprotected balcony] without taking the necessary safety precautions."[4] *Id.* at 7. Hence, this is not a case where Beckstead "ha[d] reason to expect that [Hale would] encounter the known or obvious danger because to a reasonable man in his position the advantages of doing so would outweigh the apparent risk." Restatement (Second) of Torts § 343A(1) cmt. f.

¶ 21 The distraction exception is equally inapplicable. In *Kotecki v. Walsh Constr. Co.*, a commercial painter hired to paint door frames was injured when he lost his footing on a ladder situated next to a dock-leveling mechanism at the construction site. *See* 333 Ill.App.3d 583, 267 Ill.Dec. 402, 776 N.E.2d 774, 776 (Ill.App.Ct.2002). .The dock leveler was being used to unload merchandise into the mostly-completed retail store where the appellant painter was working. *See id.*

¶ 22 At a pre-trial deposition, the appellant painter testified he "knew the dock area was being used . . . to unload merchandise" and that there were many other tradesmen in the area. *Id.* The appellant painter conceded that the foregoing conditions constituted a known or obvious danger, "but claim[ed] that the distraction . . . exception[ ] appl[ied] to impose liability." *Id.* at 779. The Illinois Court of Appeals disagreed and affirmed the trial court's grant of summary judgment for the store owner. *See id.* at 775, 780–81. In so holding, the *Kotecki* court noted that the Restatement's distraction exception contemplates unusual distractions; not merely those conditions and activities typical of any construction site. *See id.* at 780 ("A distraction-free environment on a construction project would be an impossible burden to meet." "Imposing a duty to guard against [every] distraction[ ] . . . on a construction project ignores the reality of the construction industry."); *cf. House v. Armour of Am., Inc.*, 929 P.2d 340, 344 (Utah 1996) ("If a manufacturer had to warn consumers against every such obvious danger inherent in a product, the list of obvious [dangers] would be so long, it would fill a volume" (quotations and citations omitted.)).

¶ 23 Here, like the appellant painter in *Kotecki*, Hale would have us apply Restatement section 343A(1) comment f to impose upon land possessors a duty to anticipate and mitigate against ordinary distractions which might cause worker invitees harm from known and obvious dangers on construction sites.[5] We refuse to apply such an expansive and impractical rule.

---

4. We note that Hale failed to provide the trial court with any evidence as to how his presence on Beckstead's land for purposes of painting might require a deliberate encounter with the unprotected balcony.

5. Hale put no evidence before the trial court to indicate that any unusual distraction existed in Beckstead's unfinished house. Where "there is an absence of evidence of the cause of plaintiff's injury[, we cannot know] whether [Hale] was

## CONCLUSION

¶ 24 Hale contracted with Beckstead to paint the interior of Beckstead's house while construction was ongoing. Hale stepped off an unprotected balcony area that was known and obvious to him. Beckstead should not have expected that Hale would necessarily encounter the unprotected balcony, or that his attention would be distracted from it. Accordingly, we hold that Beckstead was relieved of any duty to Hale. Hence, we affirm the district court's grant of summary judgment.[6]

¶ 25 I CONCUR: GREGORY K. ORME, Judge.

THORNE, Judge (dissenting).

¶ 26 I respectfully dissent and disagree with the majority's assertion that the Utah Supreme Court overruled, sub silento, *Donahue v. Durfee*, 780 P.2d 1275 (Utah Ct.App. 1989). *See House v. Armour of America, Inc.*, 929 P.2d 340 (Utah 1996), *aff'g* 886 P.2d 542 (Utah Ct.App.1994); *Golding v. Ashley Cent. Irrigation Co.*, 902 P.2d 142, 145–48 (Utah 1995); *Pratt v. Mitchell Hollow Irrigation Co.*, 813 P.2d 1169, 1172–73 (Utah 1991). After reading the cases cited by the majority, I believe that the Utah Supreme Court's position is, at best, ambiguous concerning our holding in *Donahue*.[1] Because it is unclear that the cases relied upon by the majority do in fact "revive" the open and obvious danger rule in landowner liability cases, I conclude that this court is bound by the reasoning in *Donahue*.[2]

Under the doctrine of stare decisis, once a point of law is decided, that ruling should be followed by a court of the same or a lower rank in subsequent cases confronting the same legal issue. Once the court of last resort makes a legal ruling, decisions on the same issue by courts of a lower rank are superseded.

*State v. Shoulderblade*, 905 P.2d 289, 292 (Utah 1995) (citations and quotations omitted). "Although the doctrine is typically thought of when a single-panel appellate court is faced with a prior decision from the same court, stare decisis has equal application when one panel of a multi-panel appellate court is faced with a prior decision of a different panel." *State v. Thurman*, 846 P.2d 1256, 1269 (Utah 1993).

¶ 27 Until the Utah Supreme Court overrules *Donahue* or establishes a precedent at odds with *Donahue*, we are bound to follow our pronouncement in *Donahue* that the open and obvious dangers rule is incompatible with a comparative negligence system.

---

distracted or merely inattentive to an obvious danger." *Kotecki v. Walsh Constr. Co.*, 333 Ill. App.3d 583, 267 Ill.Dec. 402, 776 N.E.2d 774, 780 (2002) (citing *Wreglesworth v. Arctco Inc.*, 317 Ill.App.3d 628, 251 Ill.Dec. 363, 740 N.E.2d 444, 454 (2000) (holding the distraction exception does not require landowners to guard against an invitee's inattention to an obvious danger)).

6. Hale also argued the district court erred in not allowing consideration of violations of OSHA regulations in determining liability. However, Hale correctly notes that OSHA regulations "do[ ] not create a [duty] where none existed before." *See Tallman v. City of Hurricane*, 1999 UT 55,¶ 4, 985 P.2d 892 (holding that OSHA regulations are relevant as to breach, but that OSHA regulations do not create a duty). Because we hold that Beckstead owed no duty to Hale, we need not reach the issue of whether the district court erred in not allowing consideration of OSHA violations in this case.

1. For example, *House v. Armour of America, Inc.*, 929 P.2d 340 (Utah 1996), *aff'g* 886 P.2d 542 (Utah Ct.App.1994), deals specifically with the notion of product liability. *See id.* at 342–43.

*Golding v. Ashley Central Irrigation Co.*, 902 P.2d 142 (Utah 1995), addresses liability under the Landowner Liability Act and *Pratt v. Mitchell Hollow Irrigation Co.*, 813 P.2d 1169 (Utah 1991), addresses liability to trespassers and the attractive nuisance doctrine. *See also Golding*, 902 P.2d at 148; *Pratt*, 813 P.2d at 1173. I believe these arenas of the law are sufficiently different from the facts at issue here that it is unwise to conclude that the standards articulated therein necessarily apply to this factual situation.

2. In *House*, 886 P.2d at 548, we reaffirmed our pronouncement in *Donahue v. Durfee*, 780 P.2d 1275 (Utah Ct.App.1989), that the open and obvious danger rule is inconsistent with a comparative negligence system. *Laws v. Blanding City*, 893 P.2d 1083, 1085 (Utah Ct.App.1995), the case extensively relied upon by the majority, also cites *Donahue* favorably, but then, inexplicably, appears to depart from its principles. *Id.* at 1286. Thus, between *Donahue* in 1989 and *House* in 1994, we held firm to the idea that the open and obvious danger rule is inconsistent with a comparative negligence system.

Accordingly, I would reverse the trial court decision and remand for proceedings consistent with *Donahue.*