2020 UT App 28

# THE UTAH COURT OF APPEALS

CRAIG FEASEL,
Appellant,
*v.*
TRACKER MARINE LLC AND BRUNSWICK CORPORATION,
Appellees.

Opinion
No. 20180332-CA
Filed February 21, 2020

Second District Court, Morgan Department
The Honorable Noel S. Hyde
No. 140500037

Michael A. Worel and Richard Eric Shelton,
Attorneys for Appellant

Sarah E. Spencer, Nathan D. Alder, and Michael C.
McMullen, Attorneys for Appellee Tracker
Marine LLC

Elisabeth M. McOmber and Patrick X. Fowler,
Attorneys for Appellee Brunswick Corporation

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES KATE APPLEBY and JILL M. POHLMAN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     Craig Feasel appeals the district court's decision granting Tracker Marine LLC (Tracker) and Brunswick Corporation's (Brunswick) (collectively, Defendants) motion to strike Feasel's and another witness's declarations and its grant of summary judgment in favor of Defendants on Feasel's failure-to-warn claim. We reverse and remand for further proceedings.

### BACKGROUND[1]

¶2     In June 2012, Feasel went fishing in a small bass boat with a friend, Martinez, on a reservoir in Morgan County, Utah. Martinez was driving the boat, which was manufactured by Tracker and equipped with an engine manufactured by Brunswick. The boat struck an unknown object, and Feasel and Martinez were ejected from the boat. Although the boat was equipped with a kill-switch lanyard,[2] Martinez was not wearing it at the time of the impact, and the boat continued to operate under power after the two men were ejected. But rather than move forward, away from the men, the boat turned into a tight circle. Martinez was able to swim out of the boat's path, but Feasel was repeatedly struck and sliced by the boat's propellers as the boat continued to circle. Nearby boaters succeeded in rescuing Feasel, who was flown to the hospital.

¶3     The boat's user manuals included warnings regarding the use and purpose of the kill-switch lanyard, the danger presented by a spinning propeller blade, and the possibility that the steering wheel may spin if released. Additionally, labels affixed near the boat's steering wheel warned users to wear the kill-switch lanyard, to "[k]eep a firm and continuous grip on the steering wheel," to check that no one is in the water near the boat when the engine is started, and that the rotating propeller could cause injury. None of the warnings stated that wearing the

---

1. "In reviewing a district court's grant of summary judgment, we view the facts and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party and recite the facts accordingly." *Ockey v. Club Jam*, 2014 UT App 126, ¶ 2 n.2, 328 P.3d 880 (quotation simplified).

2. When properly worn by the boat's driver, a kill-switch lanyard will shut off the boat's engine if the driver is accidentally ejected from the boat.

kill-switch lanyard would prevent the boat from turning in circles if the driver was ejected from the boat.

¶4 Feasel sued Defendants,[3] asserting strict liability and negligence claims based on defective design and failure to warn, as well as claims for breach of warranty. Following discovery, Defendants moved for summary judgment on Feasel's claims.[4]

¶5 Feasel opposed the motion, asserting that genuine issues of material fact precluded summary judgment. Feasel presented evidence that the physical phenomenon whereby a driverless boat begins circling—referred to colloquially as the circle of death—is well-known in the boating industry but is not common knowledge among "[o]rdinary boat users." Although the kill-switch lanyard is designed to shut off the motor if the driver is accidentally ejected from the boat, so that it does not begin turning in a circle of death, Defendants were aware that fewer than fifty percent of boaters actually use the lanyard. A safety manager for Brunswick opined that people do not wear the lanyard because they do not understand its purpose. And a compliance engineer for Tracker stated that Tracker was aware that people do not wear the lanyard and had discussions about how to encourage lanyard use but that "[t]he outcome of those discussions was essentially the continuance of the information" already contained in Tracker's manual.

¶6 Feasel also relied on declarations he and Martinez submitted to the court. Feasel's declaration stated that he had not heard of the circle of death before the accident and that if he had known about it, he would have "insisted" that Martinez

---

3. Feasel also sued Martinez for negligence, but this claim was voluntarily dismissed after the parties reached a settlement.

4. Although the district court granted summary judgment in favor of Defendants on all Feasel's claims, on appeal he challenges only the court's ruling on his failure-to-warn claim. We therefore discuss only the facts relating to that issue.

wear the lanyard and would not have ridden in any boat in which the driver was not wearing a lanyard. Martinez's declaration stated that before the accident, he had read that driverless boats can circle in stormy weather but that he did not understand that this could happen in clear weather. He stated that if he had known that the circle of death could occur in clear weather, he would have worn the lanyard on the day of the accident.

¶7      Finally, Feasel presented expert testimony indicating that the circle of death presents a "different situation[]" from the general danger a rotating propeller poses to people in the water and that Defendants' warnings were inadequate to convey the specific danger presented by the circle of death. One of Feasel's experts crafted an alternate proposed warning specifically explaining the circle of death and linking the risk of such a danger to the need for boaters to always wear the kill-switch lanyard. The expert opined that a more explicit warning similar to the one he designed would result in people "more likely than not" wearing the lanyards.

¶8      Prior to the hearing on the summary judgment motion, Defendants moved to strike Feasel's and Martinez's declarations, asserting that certain of their statements were inconsistent with previous statements made in their depositions. The district court agreed and struck those paragraphs in which Feasel and Martinez expressed their lack of awareness of the circle-of-death phenomenon and asserted that they would have acted differently if they had been aware of the danger. The court then granted Defendants' motion for summary judgment. Specifically with respect to the failure-to-warn issue, the district court determined that Feasel could not establish his claim as a matter of law because (1) Defendants provided warnings in the boat's user manuals and the labels on the boat, and Martinez was aware of these warnings; (2) Defendants had no duty to warn Feasel directly, as a passenger; (3) no warning Martinez could have received would have made a difference to his heeding the warning; and (4) the expert's proposed alternative warning was

too speculative to create a factual issue for the jury. Feasel now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶9    Feasel first challenges the district court's decision to strike his and Martinez's declarations on the ground that the declarations were inconsistent with their earlier depositions. "We review a district court's decision on a motion to strike affidavits submitted in support of or in opposition to a motion for summary judgment for an abuse of discretion." *Mower v. Simpson*, 2017 UT App 23, ¶ 11, 392 P.3d 861 (quotation simplified).

¶10    Feasel further asserts that he presented sufficient evidence to preclude summary judgment on his inadequate warning claim and that the court erred in granting summary judgment in Defendants' favor. "Because a district court's ruling on summary judgment is a question of law, we review it for correctness." *Rupp v. Moffo*, 2015 UT 71, ¶ 5, 358 P.3d 1060.

## ANALYSIS

### I. The District Court Exceeded Its Discretion in Striking Martinez's and Feasel's Declarations.

¶11    Feasel first argues that the district court exceeded its discretion by striking his and Martinez's declarations on the ground that certain statements in the declarations contradicted their deposition testimony. "When a party takes a clear position in a deposition, that is not modified on cross-examination, he may not thereafter raise an issue of fact by his own affidavit which contradicts his deposition, unless he can provide an explanation of the discrepancy." *Magana v. Dave Roth Constr.*, 2009 UT 45, ¶ 39 n.33, 215 P.3d 143 (quotation simplified). Having reviewed Feasel's and Martinez's declarations, as well as their depositions, we see no evidentiary basis for the district

court's determination that the statements made in the two men's declarations contradicted their deposition testimony.

¶12    The district court struck the following statements from Feasel's declaration:

> 5. Before the Accident, I did not know about the Circle of Death.
>
> . . . .
>
> 7. Before the Accident, the Circle of Death was not a danger that I contemplated for boating.
>
> 8. Before the Accident, I did not have any experience or training about the Circle of Death.
>
> 9. If I had known about the Circle of Death, I would have insisted that the operator of the boat use a kill-switch lanyard while operating the boat.
>
> 10. If I had known about the Circle of Death, I would have not ridden in any bass boat in which the operator is not using the kill-switch lanyard.

¶13    In his deposition, Feasel testified as follows:

> Q. Where did you first hear that phrase, the circle of death?
>
> A. After my accident, when I got home and I started looking at accident statistics, injuries, the boating industry reports, coast guard, those kinds of things, because I was curious as all get out.
>
> . . . .
>
> Q. And based on your knowledge of how the kill switch works when the lanyard is attached, as far

as you know, if Mr. Martinez had simply attached the lanyard to his person, the kill switch would have stopped the motor when he was ejected; true?

A. True.

Q. And if the kill switch immediately stops the motor, then the boat is not going to circle and strike you; true?

A. True.

Q. When you operate your Skeeter boat, before this accident with Mr. Martinez, you were certainly well aware that you were responsible for safe operation, including attaching the lanyard, the kill switch lanyard?

A. Yes.

. . . .

. . . . I've just never, ever fathomed the violent potential of circle of death situation in a boat.

Q. But you would agree with me, would you not, that you knew that a rotating propeller, a boat at full throttle with a rotating propeller, that propeller could cause injury if you came in contact with it?

A. I think that's pretty much common sense, yes, I do agree with you.

Q. And you knew that prior to the accident; correct?

A. Yes.

¶14 Defendants assert that these statements indicate that Feasel

was aware of the dangers of a rotating propeller and [a driverless] boat, he was aware of the danger of being hit by a propeller when in the water, he knew that a boat driver always needed to wear the stop switch lanyard, and he knew that if the stop switch is worn and stops the motor, the boat will not circle and strike an ejected occupant.

They maintain that the stricken portions of Feasel's declaration contradicted representations made during his deposition. But Feasel's declaration did not state that he was unaware of the general dangers posed by a propeller; rather, he stated that he was unaware that a driverless boat would begin turning in a circle of death, returning to strike the ejected occupants. This is not inconsistent with his deposition statement that he did not learn of the circle-of-death phenomenon until after the accident. And although Feasel acknowledged that he knew the function of a kill switch, that a lanyard should be worn for safe operation of a boat, and that he would not have been struck by the circling boat if Martinez had worn the kill-switch lanyard, he never stated that he knew prior to the accident that a driverless boat was prone to circling or that the kill switch was intended to prevent the specific danger of an ejected driver or passengers being struck by a circling boat.

¶15   As to Martinez's declaration, the district court struck the following statements:

> 3. Prior to the Accident, I had read that boats could spin in a circle when people were thrown from the boat in stormy weather.
>
> 4. Because of this danger in stormy weather, I wore the kill-switch lanyard when I drove the boat in stormy weather.

5. Prior to the Accident, I did not know that people would be thrown from a boat and the boat would spin with no one in them in clear weather.

. . . .

9. Prior to the Accident, I did not know that when all people in a boat are thrown out of the boat it can continue to circle in clear weather.

10. If I had known at the time of the Accident that in clear weather a boat could spin when all people were thrown from the boat, I would have worn the engine-stop-switch lanyard.

. . . .

12. Since the Accident, I now wear the kill-switch lanyard when I drive the boat, irrespective of the weather conditions, because I now know that a boat can continue to spin even without people in the boat.

¶16 In his deposition, Martinez testified as follows:

Q. So you also knew that if you were to fall out or be ejected, that that kill switch could save your life if you wore the lanyard?

A. Correct.

Q. And that could happen in a couple of ways. You know the boat would keep running if you didn't wear the lanyard and you were thrown out, and so you might not be able to get back to the boat; right?

A. Correct.

Q. So you knew that there was a risk of drowning if you didn't wear that lanyard; right?

A. Correct.

Q. You also knew that if you didn't wear that lanyard and you were thrown out, that the boat would keep going. It might strike a person in the water; right? That's a risk?

A. I would say yes.

Q. Right. You knew that before this accident, didn't you?

A. I would say I was aware of that, yes.

. . . .

Q. And if for some reason the boat does a circle, then you could be the person that gets hit by the boat; right?

A. Right.

Q. That's obvious, too, isn't it?

A. Yes.

Q. And you knew that before this accident; right?

A. I will say yes.

Q. No one had to tell you that, you knew that; right?

A. I read about it before. I just didn't think it was going to happen to me.

Q. You knew it could happen but you didn't think it would happen?

A. Right.

Q. I guess you thought it might happen if you were in stormy weather, though, that's why you wore the lanyard.

A. Correct.

. . . .

Q. [In your answer to Interrogatory No. 2,] you say, "The lanyard was used in stormy weather." Did I read that correctly?

A. Yes.

Q. Are you referring to the kill switch or the stop switch lanyard on the throttle control?

A. Yes.

Q. Why would you use the lanyard in stormy weather?

A. Because it's spooky out at—it's really—when you get bad weather, the waves get really high. And if it's stormy around here, and windy, it can be pretty scary.

Q. So you were anticipating, because of the waves, that you wanted to wear the lanyard in case you hit a big wave?

A. Correct.

Q. Is that the only time you used the lanyard on your boat before this accident, was in stormy weather?

A. Yes.

. . . .

Q. You didn't need Tracker Marine to invent some other gadget, you didn't need some additional warning, you knew, as the operator of the boat, that you had to take responsibility for safe operation, which included wearing the lanyard, true?

A. I don't know about all the first statements that you're talking about creating or making a better product, but if I would have been wearing the lanyard, yes, the accident would not have happened.

Q. And you knew that before the accident?

A. Yes.

Q. So you didn't need any other warning or gadget, you just needed to wear the lanyard to prevent this accident; right?

A. Right.

¶17 As with Feasel's declaration, nothing in Martinez's declaration contradicts his deposition testimony. In his deposition, Martinez stated that he knew that "if for some reason" the boat circles, it can return to hit the people who had been ejected from the boat, but he did not state that he was aware that a boat could circle in clear weather, and in fact, he emphasized that he believed it was necessary to wear the lanyard primarily in stormy weather. And as with Feasel, Martinez's acknowledgment that the accident would not have happened if he had worn the lanyard does not demonstrate that he was aware of the specific circle-of-death phenomenon. His declaration merely "clarifies[] and expands his deposition testimony" regarding his beliefs about the relative dangers of stormy and clear weather rather than contradicting it. *Cf. Uintah Basin Med. Center v. Hardy*, 2005 UT App 92, ¶ 14 n.1, 110 P.3d 168.

¶18    While the jury might ultimately question the credibility of Feasel's claim that he was unaware of the circle-of-death phenomenon or Martinez's claim that he believed it occurs only in times of bad weather, the depositions and declarations are not inconsistent. The district court therefore exceeded its discretion in striking them.

## II. Material Disputed Facts Precluded Summary Judgment on Feasel's Inadequate Warning Claim.

¶19    We next turn to the question of whether the district court correctly granted summary judgment to Defendants on Feasel's inadequate warning claim. "[U]nder Utah law, a manufacturer may be held strictly liable for any physical harm caused by its failure to provide adequate warnings regarding the use of its product." *House v. Armour of Am., Inc.* (*House II*), 929 P.2d 340, 343 (Utah 1996). To establish his inadequate warning claim, Feasel is required to prove (1) that Defendants had a duty to warn, (2) that the warning was inadequate, (3) that the inadequate warning made the product unreasonably dangerous, and (4) that the lack of an adequate warning caused the injury. *See id.* at 343, 346.

### A.    Adequacy of the Warnings

¶20    The first ground on which the district court relied in granting summary judgment on Feasel's inadequate warning claim was its determination that warnings were provided to boat drivers in the boat manuals and on labels affixed near the boat's steering wheel and that Martinez testified that he read and understood the warnings. But Feasel does not dispute that Defendants provided warnings in the boat manuals and on labels on the boat or that both Feasel and Martinez understood them as they were presented. Rather, he disputes that those warnings were adequate to warn of the danger posed by the circle-of-death phenomenon. Feasel asserts that Defendants had a duty to provide a specific warning regarding the risk of the circle of death and that the existing warnings exhorting users to

wear the kill-switch lanyard were inadequate because they did not mention the circle of death.[5] The adequacy of a warning ordinarily "presents a question of fact, to be resolved by the trier of fact." *House v. Armour of Am., Inc.* (*House I*), 886 P.2d 542, 551 (Utah Ct. App. 1994), *aff'd*, 929 P.2d 340 (Utah 1996).

¶21 Defendants maintain that the district court correctly rejected Feasel's inadequate warning arguments as a matter of law because (1) the danger was open and obvious such that a warning was not required as a matter of law; (2) Martinez's and Feasel's actual knowledge, training, and experience precluded a finding that the lack of warnings made the boat unreasonably dangerous; and (3) the warnings were adequate as a matter of law. We address each argument in turn.

¶22 Defendants' assertion that "a reasonable consumer would 'generally know' and 'recognize' that the boat propeller could strike and seriously injure or kill them if they were ejected," (citing *House II*, 929 P.2d at 343 (quotation simplified)), ignores the basis of Feasel's claim—that consumers were unlikely to know that a driverless boat would spin into a circle of death. Even if we accept the idea that consumers are generally aware that they may be injured by a propeller if ejected from a boat, the danger of incurring multiple propeller wounds from a circling boat is more specific. No information was presented to the district court to show that consumers generally are aware of the propensity of boats without a driver to circle, and indeed, Feasel presented evidence to the contrary. Based upon the evidence presented to the district court, the particular danger at issue here—the circling boat—was not so open and obvious that

---

5. The manuals included warnings that "[t]he steering torque of the engine can cause the steering wheel to spin if released, resulting in serious damage to the boat or serious injury or death to dislodged occupants," but this warning was not included in the warning explaining the purpose of the lanyard or on the labels affixed to the boat.

Defendants had no duty to warn as a matter of law. *See House II*, 929 P.2d at 343 (explaining that an open and obvious danger is one that is "generally known and recognized" (quoting Restatement (Second) of Torts § 402A cmt. j (Am. Law Inst. 1965))); *see also infra* ¶ 26.

¶23     Defendants further assert that Feasel cannot establish that the absence of adequate warnings made the boat unreasonably dangerous, because Martinez and Feasel had extensive knowledge, training, and experience with respect to boating. Under Utah law, whether a product is "unreasonably dangerous" must be considered in light of the "actual knowledge, training, or experience possessed by that particular buyer, user, or consumer." Utah Code Ann. § 78B-6-702 (LexisNexis 2018). Defendants assert that "[i]t is undisputed that Martinez and Feasel had actual knowledge, training and experience regarding the reasons why operators must wear the lanyard and the hazards of not doing so." But Feasel stated in his declaration that he was unaware of the circle-of-death phenomenon until after the accident, and Martinez stated in his declaration that he believed boats would circle only in bad weather. Thus, there exists a dispute of material fact as to whether Feasel and Martinez, who were seasoned boaters, had actual knowledge of the specific hazard at issue in this case.

¶24     Finally, Defendants assert that the warnings provided were adequate as a matter of law. An adequate warning "must completely disclose all the risks involved, as well as the extent of those risks"; specifically, it must "(1) be designed so it can reasonably be expected to catch the attention of the consumer; (2) be comprehensible and give a fair indication of the specific risks involved with the product; and (3) be of an intensity justified by the magnitude of the risk." *House I*, 886 P.2d at 551 (quotation simplified). Defendants argue that the warnings they provided in their manuals and on their boats were adequate because the warnings "explain the ability of the lanyard to stop the boat from circling in the water." But the warnings do not explicitly link the admonition to wear the lanyard with the danger of a driverless boat turning in a tight circle.

¶25 The manual contains a number of warning boxes, set apart from the main text and labeled with the all-caps word WARNING and a symbol of an exclamation point set inside a triangle. Several of these warnings explain that the lanyard's purpose is to turn off the engine in the case of accidental ejection. However, none of these warnings explain the danger presented by the boat turning back toward ejected passengers and circling over them. One line in each of Tracker's and Brunswick's manuals states, "While activation of the lanyard stop switch will stop the engine immediately, a boat will continue to coast for some distance depending upon the velocity and degree of any turn at shut down. However, the boat will not complete a full circle." This information is included in the main text of the manual rather than in one of the labeled warning boxes, and the danger presented by the boat continuing to circle is not articulated. A warning box in a different part of the manual directs users to keep a hand on the steering wheel at all times because "[t]he steering torque of the engine can cause the steering wheel to spin if released, resulting in . . . serious injury or death to dislodged occupants." But this warning is linked specifically to the need for the driver to keep at least one hand on the steering wheel, not the need to wear the lanyard. Further warnings instruct users about the dangers of the propellers and advise users to shut off the motor if anyone is in the water or if the driver falls out. One warning label affixed to the right of the steering wheel instructs users to ensure that the lanyard is "operational and securely fastened" before starting the engine, and a separate label nearby warns that a "[r]otating propeller may cause serious injury or death." None of the affixed labels refer to the possibility that a driverless boat may spin in a tight circle while under power.

¶26 Given that none of the warnings provided here specifically warn that the failure to wear a lanyard may result in a circle-of-death situation, Defendants have not demonstrated that, as a matter of law, the warnings were adequate. Rather, we think this is a question for the jury. A jury may well conclude that the warnings, read together, were adequate, but without

more explicit warnings, this issue should not have been resolved as a matter of law. *Cf. Groesbeck v. Bumbo Int'l Trust*, 718 F. App'x 604, 618 (10th Cir. 2017) (holding that multiple clear and prominent on-product warnings directing consumers not to use a baby seat on elevated surfaces and specifically warning that babies can fall out of the seat were adequate as a matter of law).

¶27 Because the question of whether the warnings here were adequate should have been left to the fact-finder, the district court erred in granting summary judgment on this basis.

B. Causation

¶28 The district court next determined that Feasel could not establish causation because Martinez stated in his deposition that "any other warning that he may have received would not have made any difference" to his heeding that warning. However, this does not appear to be an accurate characterization of Martinez's testimony. Although Martinez stated that he should have worn the lanyard, even in the absence of additional or more explicit warnings, he never stated that an additional warning would not have made a difference. And in his declaration, which we have determined to be admissible, he explicitly declared, "If I had known at the time of the Accident that in clear weather a boat could spin when all people were thrown from the boat, I would have worn the engine-stop-switch lanyard," and, "Since the Accident, I now wear the kill-switch lanyard when I drive the boat, irrespective of the weather conditions, because I now know that a boat can continue to spin even without people in the boat." This evidence is sufficient to put the question of causation in the hands of the jury, and therefore the district court erred in ruling on the issue of causation as a matter of law.

III. Additional Issues

¶29 Feasel raises two additional issues on appeal that are not essential to our determination. Nevertheless, because these

matters may be relevant on remand, we address them briefly here.

## A.      Duty to Passengers

¶30    During oral argument on the motion for summary judgment, Defendants asserted, for the first time, that the duty to warn does not extend to passengers.[6] When it became clear that this was a question the district court was considering, Feasel requested the opportunity to brief it further, which the court denied. The court then concluded that Defendants had no duty to warn Feasel directly as a passenger and relied on this conclusion in its summary judgment ruling.

¶31    Utah has adopted section 402A of the Second Restatement of Torts with respect to strict products liability. *See Bylsma v. R.C. Willey*, 2017 UT 85, ¶ 21, 416 P.3d 595. The comments to section 402A define "user" as including "those who are passively enjoying the benefit of the product, as in the case of passengers in automobiles or airplanes." Restatement (Second) of Torts § 402A cmt. l (Am. Law Inst. 1965). Likely due to the lack of briefing, the district court did not analyze this provision or explain why it believed the provision would not apply in this

---

6. The district court also observed that Feasel's assertion that Defendants had a duty to warn him directly was a new theory not raised in his complaint, which alleged only that Defendants had "fail[ed] to adequately warn boat operators." Feasel appears to be using this alternate theory to guard against the possibility that the jury might find that Martinez had actual knowledge of the dangers presented by the circle of death. *See supra* ¶ 23. On appeal, we address only the court's legal conclusion that the duty to warn does not extend to passengers. The possibility that Feasel may be precluded from pursuing his theory for procedural or other reasons is a matter for the court to address on remand.

case.[7] Defendants have pointed us to no case law that would preclude applying this definition of "user" in the failure-to-warn context.[8] Thus, the district court erred on this point.

---

7. The district court cited the example of other occupants of the reservoir who might be in danger from a driverless boat, pointing out that it would be impossible to provide warnings to such individuals. But a passenger clearly has a greater ability to ensure his own safety than a person in the water who has no connection to a boat or its driver. A boat passenger who receives an adequate warning has the ability to encourage the driver to follow safety instructions or to elect not to ride in the boat if the driver does not do so.

8. Defendants have misinterpreted the cases they cite. For example, they represented the holding in *Marshall v. Ford Motor Co.*, 446 F.2d 712 (10th Cir. 1971), as follows: "The Tenth Circuit . . . conclud[ed] that the driver, not the manufacturer, had the obligation to warn passengers of relevant hazards arising from seatbelt nonuse. Where the driver was adequately warned, such that she knew about the need for passengers to wear seatbelts, no separate or independent duty to warn extended to passengers." In reality, the plaintiff's failure-to-warn argument was rejected in that case because "the function of seat belts is a matter of common knowledge." *Id.* at 715. The court went on to point to the fact in that case that the driver had repeatedly warned her passengers to wear seatbelts. *Id.* Thus, the *Marshall* court did not hold that the duty to warn does not generally extend to passengers. In citing *Stevens v. Cessna Aircraft Co.*, 115 Cal. App. 3d 431 (Ct. App. 1981), Defendants accurately represent the court's holding that an aircraft manufacturer was not required to warn passengers about aircraft weight limitations, but they neglect to acknowledge that the court explicitly distinguished airplane passengers from other types of passengers due to the fact that airplane passengers "necessarily depend[] upon the skill and judgment of the pilot." *Id.* at 434. In

(continued…)

B.      Expert Testimony

¶32    Feasel also takes issue with the district court's determination that his expert's testimony was too speculative to support a finding of causation. Feasel analyzes this issue under rule 702 of the Utah Rules of Evidence and challenges the court's decision to "exclude" the expert testimony without motion or briefing. The district court did not actually go so far as to exclude the testimony, primarily because its summary judgment ruling obviated the need for a trial. We are therefore not in a position to review the admissibility of the expert testimony.

¶33    However, we do believe that the court's finding regarding the sufficiency of the expert testimony was premature and possibly based on erroneous information. This issue was raised for the first time at the summary judgment hearing and was not fully briefed by the parties. Further, Feasel alleges that counsel for Defendants made a number of representations regarding the expert's testimony that were not entirely accurate and on which the district court may have relied in assessing Feasel's expert's reliability.

¶34    In screening out unreliable expert testimony, district courts "must be careful not to displace the province of the factfinder to weigh the evidence." *State v. Jones*, 2015 UT 19, ¶ 26, 345 P.3d 1195. Rule 702 "requires only a basic foundational showing of indicia of reliability for the testimony to be admissible, not that the opinion is indisputably correct." *Majors v. Owens*, 2015 UT App 306, ¶ 12, 365 P.3d 165 (quoting Utah R. Evid. 702 advisory committee's note). In the event that Defendants seek to exclude Feasel's expert at trial, the court should entertain full briefing on the matter and thoroughly

(…continued)
short, the cases cited by Defendants do not support their position that the duty to warn does not extend to passengers in a small boat.

examine the expert's proposed testimony before reaching a decision on admissibility.

CONCLUSION

¶35 The district court exceeded its discretion in striking Martinez's and Feasel's declarations on the ground that they contradicted earlier deposition testimony. Because their declarations did not conflict with their deposition testimony, there was no basis on which to strike them. Further, the district court erred in granting summary judgment in favor of Defendants, because genuine issues of material fact remain, specifically with respect to the adequacy of the warnings, whether Martinez and Feasel had actual knowledge of the specific danger that would result from not wearing the kill-switch lanyard, and whether the failure to warn caused Feasel's injuries. Accordingly, we reverse the district court's grant of Defendant's motion to strike and motion for summary judgment with respect to Feasel's failure-to-warn claim and remand for further proceedings consistent with this opinion.

———————