2021 UT 47

IN THE

# SUPREME COURT OF THE STATE OF UTAH

CRAIG FEASEL,
*Respondent,*

*v.*

TRACKER MARINE LLC AND BRUNSWICK CORPORATION,
*Petitioners.*

No. 20200327
Heard May 12, 2021
Filed August 12, 2021

On Certiorari to the Utah Court of Appeals

Second District, Morgan County
The Honorable Noelle S. Hyde
No. 140500037

Attorneys:[1]

Michael A. Worel, Paul M. Simmons,
Salt Lake City, for respondent

Sarah Elizabeth Spencer, Nathan D. Alder, Salt Lake City, Michael C.
McMullen, Kansas City, MO, for petitioner Tracker Marine, LLC

Patrick X. Fowler, Elizabeth M. McOmber, Salt Lake City, for
petitioner Brunswick Corp.

CHIEF JUSTICE DURRANT authored the opinion of the Court in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE HIMONAS, JUSTICE PEARCE, and
JUSTICE PETERSEN joined.

CHIEF JUSTICE DURRANT, opinion of the Court:

### Introduction

¶1 Boat passenger Craig Feasel sustained critical injuries when
repeatedly struck by a boat propeller after he and the driver, Monty

---

[1] Douglas B. Cannon, Salt Lake City, for amici Utah Association
for Justice and American Association for Justice.

Martinez, were ejected into the water. Because Mr. Martinez was not wearing the stop switch lanyard at the time of the ejection, the unmanned boat remained under power. The boat ran in a continuous circle, trapping and striking Mr. Feasel repeatedly. Mr. Feasel claims Tracker Marine LLC, the boat manufacturer, and Brunswick Corporation, the engine manufacturer (Tracker and Brunswick) are liable for his injuries because they failed to adequately warn the driver of the danger associated with failure to wear the lanyard. He also claims they failed in their duty to warn boat passengers of the danger.

¶2    The district court granted summary judgment in favor of Tracker and Brunswick on both issues. On Mr. Feasel's claim that the warnings were inadequate, the court found that there were numerous warnings and that any additional warnings would not have changed Mr. Martinez's behavior because he was aware of the warnings but did not heed them. The court's findings were based in part on the exclusion of portions of Mr. Martinez's sworn declaration, in which he clarifies that he was not aware the boat could spin in calm weather. On appeal, the court of appeals held that the district court erred in excluding these portions of the declaration.[2] The court of appeals then concluded that the warnings were not adequate as a matter of law under the adequacy standard we adopted in *House v. Armour of America, Inc.*[3] because the warnings failed to specifically warn of the circling danger. We take this opportunity to modify the *House* factors, adding a standard dictating the specificity required for a warning to be adequate. We remand to the district court for further proceedings to consider the adequacy of the warnings in light of the now-admitted sworn statements and under the modified standard.

¶3    On whether Tracker and Brunswick had a duty to warn passengers, we clarify that, as a matter of law, a boat manufacturer or supplier owes a duty to adequately warn passengers of the dangers. And we adopt the standard of reasonableness to determine whether these warnings must be issued directly to the passenger or

---

[2] We did not grant certiorari on the court of appeals' holding that the district court erred in excluding the sworn statements. So the court of appeals' decision on this matter is a final determination.

[3] *House v. Armour of Am., Inc. (House II)*, 929 P.2d 340, 346 (Utah 1996).

whether a manufacturer or supplier may rely on an intermediary to convey the warnings.[4] We remand to the district court for further proceedings consistent with our clarification of the law and the reasonableness standard we adopt.

## Background

¶4 Mr. Martinez owned a bass fishing boat manufactured by Tracker and equipped with an outboard engine manufactured by Brunswick. As in many boats, the fishing boat contained a lanyard safety device designed to be worn by the driver while operating the boat. The lanyard functioned to disable the engine if detached from the boat. One end of the corded lanyard attached to an interior wall of the boat adjacent to the throttle in the driver's area. The other end was designed to clip onto the driver's wrist or belt loop. If a driver is thrown overboard while not wearing the lanyard, the boat will continue at the same speed employed at the time of the driver's ejection.

¶5 Without a driver, running boats have a tendency to turn sharply to the right. This turning causes the boat to continuously circle tightly in the water. To those in the industry, this phenomenon is called the "circle of death" because the boat can trap the ejected driver or passenger in its circle, causing the propeller to repeatedly strike and cause serious injury or death to those trapped.

¶6 On the day in question, only Mr. Feasel and Mr. Martinez occupied the fishing boat. Mr. Martinez operated the boat but was not wearing the lanyard. When the boat struck an unknown object in the water, both men were ejected. Mr. Martinez swam to safety, but Mr. Feasel became trapped in the boat's circular pattern and was struck at least three times by the propeller, sustaining serious injuries.

¶7 Mr. Feasel brought suit against Tracker and Brunswick for failure to adequately warn of the dangers associated with not wearing the lanyard.[5] Tracker and Brunswick argued that the warnings they provided were standard in the industry. They offered

---

[4] *Cf. In re Adoption of Baby B.*, 2012 UT 35, ¶ 42, 308 P.3d 382 (discussing that mixed questions are those "involving application of a legal standard to a set of facts unique to a particular case").

[5] Mr. Feasel also brought negligence claims against Mr. Martinez, which are not relevant here.

the notices placed in the boat as well as in each company's owner's manual as evidence that the warnings were adequate.

¶8    Tracker's manual contained a description of the lanyard and a warning label indicating that the lanyard should be tested, used, and replaced if not functioning. The warning itself did not expressly state what harm may arise, but a separate section of the manual stated that the presence of a colored warning label was an indication that failure to abide by the warning may result in serious bodily injury or death.

¶9    Several checklists of things to do before operating the boat also mentioned the lanyard. But the lanyard was not mentioned in the passenger-safety discussion, the emergency procedures section, or the person overboard subsection. The manual did not include any information concerning the boat's tendency to turn in a tight circle if running unmanned.

¶10 Brunswick's manual also included information about the lanyard's use. In a safety information discussion, the manual explained that the purpose of the stop switch lanyard was to stop the engine if the driver fell overboard or moved too far away from the operator's position. The manual stated that ejection was more common in some boats (like bass boats) and listed several poor operating practices that also contributed to accidental ejection. The manual noted that when the stop switch activated, the boat "will continue to coast for some distance depending on the velocity and degree of any turn at shut down. However, the boat will not complete a full circle." It further stated that "while the boat is coasting, it can cause injury to anyone in the boat's path as seriously as the boat would under power." It then "strongly recommended" that the passengers be instructed on the procedures in case of emergency such as when "the operator is accidentally ejected."

¶11 Two warning labels appeared at the end of the discussion. One addressed the danger that could result from inadvertently activating the stop switch and the other addressed the need to wear the lanyard. "If the operator falls out of the boat, stop the engine immediately to reduce the possibility of serious injury or death from being struck by the boat. Always properly connect the operator to the stop switch using a lanyard."

¶12 The boat itself also contained several warning labels and notices for various dangers. A red warning sign was located on the rear of the boat and listed the danger of carbon monoxide poisoning. Several other notices were placed near the throttle in the driver's

area. Some of these notices also had a colored warning label, but none with the warning label mentioned the lanyard or the danger associated with not wearing it. But one red warning label stated, "Rotating propeller may cause serious injury or death. Do not approach or use ladder when engine is running."

¶13 Only one notice on the boat mentioned the lanyard, a black and white placard with a checklist of things the driver should do before starting the engine. The placard was affixed near the throttle and contained no warning label but advised checking to ensure that the "[l]anyard stop switch" was "operational and securely fastened."

¶14 Each side presented expert testimony. Feasel's expert testified that the warnings were inadequate, and he presented an illustrated sample of what he considered an adequate warning. Brunswick's product safety manager also testified. He stated that some boaters, because they do not understand the danger of not wearing the lanyard, do not wear it. The manager also testified that an explicit warning of the circle of death would likely result in more operators using the lanyard.

¶15 Mr. Martinez provided a sworn declaration in which he stated that he wore the lanyard in bad weather because he was aware the boat could spin under such conditions. But he stated that he was unaware the boat could spin in calm weather. The district court found that these statements contradicted Mr. Martinez's earlier statements in his deposition testimony and so excluded the statements from the declaration.

¶16 The district court granted summary judgment in favor of Tracker and Brunswick, concluding there were many warnings of the danger and that, because Mr. Martinez was aware of the warnings, any additional warnings would not have changed his behavior. The court also held that Tracker and Brunswick did not owe a duty to warn him of the danger arising from the driver's failure to wear the lanyard. The court of appeals held that the district court erred in excluding the declaratory statements and reversed on both issues.[6] Tracker and Brunswick filed a petition for certiorari,

---

[6] The district court also excluded portions of the sworn statements from Mr. Feasel and Gary Polson, an expert witness for Mr. Feasel. The court of appeals held that the district court erred in excluding Mr. Feasel's sworn statements but did not address the exclusion of Mr. Polson's statements.

which we granted with respect to the two issues. We have jurisdiction under Utah Code section 78A-3-102(3)(a).

## Standard of Review

¶17 "[W]e review the decision of the court of appeals for correctness, 'giving no deference to its conclusions of law.'"[7] And we "review the facts in a light most favorable to the party against whom summary judgment was granted."[8]

¶18 As to the duty to warn passengers, whether a duty exists is a question of law we review for correctness.[9]

## Analysis

¶19 Tracker and Brunswick first contend that the court of appeals erred in reversing the district court's grant of summary judgment. They argue the court of appeals too strictly interpreted the specificity needed under the adequacy standard we adopted in *House v. Armour of America, Inc.*[10] Because the *House* standard lacks guidance on what level of specificity an adequate warning requires, we modify the third prong to include a specificity standard.[11] Further, because the district court granted summary judgment in favor of Tracker and Brunswick based in part on its exclusion of Mr. Martinez's sworn statements, which exclusion the court of appeals concluded was error, we remand to the district court so that it might consider the adequacy of the warnings in light of the admitted assertions and under the revised *House* standard as modified in our opinion.

¶20 Second, Tracker and Brunswick argue that the court of appeals erred in reversing the district court's holding that they had

---

[7] *Rutherford v. Talisker Canyons Fin., Co.*, LLC, 2019 UT 27, ¶ 14, 445 P.3d 474 (citing *State v. Harker*, 2010 UT 56, ¶ 8, 240 P.3d 780).

[8] *Heslop v. Bear River Mut. Ins. Co.*, 2017 UT 5, ¶ 15, 390 P.3d 314 (citation omitted).

[9] *See B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 23, 275 P.3d 228.

[10] *House v. Armour of Am., Inc. (House II)*, 929 P.2d 340, 346 (Utah 1996) (adopting the standard articulated by the court of appeals in *House v. Armour of Am., Inc. (House I)*, 886 P.2d 542, 550 (Utah Ct. App. 1994), *aff'd*, 929 P.2d 340 (Utah 1996)).

[11] *House I,* 886 P.2d at 551.

no duty to warn Mr. Feasel of the danger.[12] In its reversal of the district court, the court of appeals held that Tracker and Brunswick had a duty to *directly* warn Mr. Feasel.[13] We agree in part and disagree in part with the court of appeals. We clarify that under Utah law, a manufacturer or supplier has a duty to warn the ultimate user. And we adopt the standard as one of "reasonableness in the circumstances" for determining whether that warning must be issued *directly* or whether the duty may be satisfied by warning an intermediary.[14] Because the district court erred in concluding that no duty was owed, we remand to the district court for further proceedings consistent with our clarification of the law and the reasonableness standard we adopt.

## I.  The District Court Should Consider the Adequacy of the Warnings in Light of the Sworn Statements

¶21    Tracker and Brunswick first argue that the warnings they provided were adequate as a matter of law and that the court of appeals erred in reversing the district court's grant of summary judgment. But the district court granted summary judgment in favor of Tracker and Brunswick based in part on the exclusion of Mr. Martinez's sworn statements. And the court of appeals held that exclusion was error. So we remand to the district court for application of the standard we set forth herein in light of the sworn statements.

¶22    Under Utah law, a manufacturer "may be held strictly liable for any physical harm caused by its failure to provide adequate warnings regarding the use of its product."[15] Moreover, "a manufacturer who knows or should know of a risk associated with

---

[12] *Feasel v. Tracker Marine LLC*, 2020 UT App 28, ¶¶ 30-31, 460 P.3d 145.

[13] *Id.*

[14] RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2 cmt. i (AM. L. INST. 1998).

[15] *House v. Armour of Am., Inc.* (*House II*), 929 P.2d 340, 343 (Utah 1996); *see* RESTATEMENT (SECOND) OF TORTS § 402A cmt. j (AM. L. INST. 1965).

its product may be directly liable to the user if it fails to warn adequately of the danger."[16]

¶23 We adopted the standard for determining the adequacy of a warning in *House v. Armour of America, Inc*,[17] affirming the court of appeals' holding that a warning is adequate only if it "completely disclose[s] all the risks involved, as well as the extent of those risks."[18] The warning must "(1) be designed so it can reasonably be expected to catch the attention of the consumer; (2) be comprehensible and give a fair indication of the specific risks involved with the product; and (3) be of an intensity justified by the magnitude of the risk."[19]

¶24 While the adequacy of a warning is generally a matter for the jury,[20] a court may grant summary judgment on the issue if the moving party shows "that there is no genuine dispute as to any material fact" and that it "is entitled to judgment as a matter of law."[21] In other words, summary judgment is appropriate only when "reasonable minds could reach only one result taking all disputed facts and inferences in a light most favorable to" the non-moving party.[22]

¶25 The district court noted that there were "numerous warnings" regarding the danger at issue and held that the warnings appeared to be sufficient. But it did not fully examine the *House* adequacy factors, concluding additional warnings would not have made a difference because Mr. Martinez was "aware of the warnings" but "did not heed" them. So the court awarded summary judgment in favor of Tracker and Brunswick in part on the grounds that "other warnings would not have changed [Mr. Martinez's] behavior in this case."

---

[16] *House v. Armour of Am., Inc. (House I)*, 886 P.2d 542, 547 (Utah Ct. App. 1994), *aff'd*, 929 P.2d 340.

[17] *House II*, 929 P.2d at 346.

[18] *House I*, 886 P.2d at 551.

[19] *Id.* (citation omitted).

[20] *See House II*, 929 P.2d at 347.

[21] UTAH R. CIV. P. 56(a).

[22] *House I*, 886 P.2d at 551.

¶26 The district court relied on Mr. Martinez's deposition statements to find that he was aware of the dangers but excluded his sworn statements that he was unaware the boat could circle in calm weather. The court of appeals concluded that the district court's exclusion of the sworn statements was error. And because the weather was calm on the day in question, the court of appeals held it could not conclude, as a matter of law, that Mr. Martinez was aware of the dangers.

¶27 The court of appeals then analyzed, under the *House* factors, whether Tracker and Brunswick fulfilled their duty to adequately warn as a matter of law. It reversed the district court, concluding that summary judgment was precluded because "none of the warnings provided here specifically warn that the failure to wear a lanyard may result in a circle-of-death situation."[23] Tracker and Brunswick argue the court of appeals applied the adequate warning standard too strictly because warnings cannot warn of every potential danger and the warnings they issued "adequately describe the function, purpose, and importance of the lanyard and why the operator must wear it."

¶28 This case presents our first opportunity to apply the adequacy standard since we adopted it in *House*. And it presents the difficult and nuanced question of how specific a warning must be to fulfill the specificity prong of the test.[24] We recognize that if warnings become overly broad or overly inclusive, their force is diminished. But at the same time, the standard requires the warnings to "give a fair indication of the specific risks involved."[25] In order to balance these concerns, we hold that the degree of specificity required is determined by the magnitude of the risk, just as the degree of intensity is determined. So we revise the third prong of the

---

[23] *Feasel v. Tracker Marine LLC*, 2020 UT App 28 ¶ 26, 460 P.3d 145.

[24] *See* RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2 cmt. i (AM. L. INST. 1998) ("Product warnings and instructions can rarely communicate all potentially relevant information, and the ability of a plaintiff to imagine a hypothetical better warning in the aftermath of an accident does not establish that the warning actually accompanying the product was inadequate.").

[25] *House I*, 886 P.2d at 551 (citation omitted).

*House* standard to require that adequate warnings be of an intensity *and at a level of specificity* "justified by the magnitude of the risk."[26]

¶29   Because the district court did not examine the specificity required in the warnings, we remand to the district court for further proceedings to consider the adequacy of the warnings in light of the admitted declarations and under the revised *House* standard.

## II. A Manufacturer or Supplier Owes a Duty to Warn the Ultimate User

¶30   Tracker and Brunswick next argue the court of appeals erred in reversing the district court and holding that their duty to warn extends to directly warning passengers of the boat's dangers. We agree in part and disagree in part with the court of appeals. We clarify that a manufacturer or supplier has a duty to warn the ultimate user.[27] But whether the manufacturer or supplier must warn the ultimate user directly or whether this duty may be satisfied by warning an intermediary depends on the circumstances. We adopt the standard of "reasonableness in the circumstances" for determining when the ultimate user must be warned directly.[28] Because we clarify the law on this point and adopt the reasonableness standard, we remand to the district court for further proceedings consistent with our clarification.[29]

¶31   Whether a duty is owed is determined "as a matter of law and on a categorical basis for a given class of tort claims."[30] In other words, we do not determine duty based on a set of facts in a given case but rely on categorical rules of law "applicable to a general class of cases."[31] So in this case, whether Tracker and Brunswick owed a

---

[26] *Id.* (citation omitted).

[27] *See* RESTATEMENT (SECOND) OF TORTS § 402A cmt. h (AM. L. INST. 1965).

[28] RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2 cmt. i (AM. L. INST. 1998).

[29] When we clarify the law, "we may remand for further proceedings" so that the record may be developed "in light of the newly articulated rule. *Park v. Stanford*, 2011 UT 41, ¶ 33, 258 P.3d 566.

[30] *B.R. ex rel. Jeffs v. West*, 2012 UT 11, ¶ 23, 275 P.3d 228.

[31] *Id.* (citation omitted).

duty to warn Mr. Feasel does not turn on the personal understanding Mr. Martinez may have had of the dangers associated with not wearing the safety lanyard. Rather, we consider generally whether a boat manufacturer or supplier owes a duty to adequately warn passengers about the vessel's dangers.[32]

¶32  A manufacturer "may be held strictly liable for any physical harm caused by its failure to provide adequate warnings regarding the use of its product."[33] Moreover, "a manufacturer who knows or should know of a risk associated with its product may be directly liable to the user if it fails to warn adequately of the danger."[34] A user includes "those who are passively enjoying the benefit of the product, as in the case of passengers in automobiles or airplanes."[35] "[I]t is not necessary that the ultimate user or consumer have acquired the product directly from the seller" or "that the consumer have purchased the product at all. He may be a member of the family of the final purchaser . . . or a guest at his table . . . ."[36]

¶33 Both parties agree that a boat passenger qualifies as an ultimate user. We conclude that because a manufacturer has a duty to warn the ultimate user and because a boat passenger is such user, a boat manufacturer or supplier owes a duty to adequately warn boat passengers of dangers associated with the vessel.

A. *The Standard for Determining Whether a Manufacturer or Supplier May Satisfy Its Duty to Warn the Ultimate User by Warning an Intermediary Is One of Reasonableness in the Circumstances*

¶34  Tracker and Brunswick next argue that they satisfied any duty to warn the ultimate user (the passenger) in this case by warning the purchaser and relying on the purchaser to relay the warnings to the passengers. Although we do not examine whether Tracker and Brunswick satisfied their duty to warn passengers in

---

[32] *See id.*

[33] *House v. Armour of Am., Inc. (House II)*, 929 P.2d 340, 343 (Utah 1996) (citations omitted); *See* RESTATEMENT (SECOND) OF TORTS § 402A.

[34] *House v. Armour of Am., Inc. (House I)*, 886 P.2d 542, 547 (Utah Ct. App. 1994), aff'd, 929 P.2d 340 (Utah 1996); *see* RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2 (AM. L. INST. 1998).

[35] RESTATEMENT (SECOND) OF TORTS § 402A cmt. l.

[36] *Id.*

this case, we make clear that in some instances fulfilling the duty to warn the ultimate user does not require a direct warning. Under some circumstances, a manufacturer or supplier may satisfy its duty to warn the ultimate user by warning an intermediary.

¶35   Section 388 of the Second Restatement of Torts and section 2(c) of the Third Restatement of Torts address the supplier's duty to issue adequate warnings for products that are "often supplied for the use of others" through intermediaries.[37] We have previously adopted section 388, and this case gives us the opportunity to now adopt section 2(c) of the Third Restatement of Torts as well, subject to interpretation in accordance with Utah's established law.[38]

¶36 Section 388 and section 2 recognize that there are circumstances under which it may be unnecessary or nearly impossible for a manufacturer or supplier to directly warn the ultimate user.[39] Because of this "[t]here is no general rule as to whether one supplying a product for the use of others through an intermediary" must warn the ultimate product user directly or "may rely on the intermediary to relay warnings."[40]

---

[37] RESTATEMENT (SECOND) OF TORTS § 388 cmt. n (AM. L. INST. 1965); *see also* RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2(c).

[38] Section 2, comment (i) of the Third Restatement of Torts characterizes the issue of whether a manufacturer fulfills its duty to warn the ultimate user by warning an intermediary as a question of whether the supplier owes a "duty to warn the ultimate product user directly." RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2 cmt. i. But because this determination is fact-specific, and because under Utah law duty is established for general classes and not on a case-by-case basis, *see B.R. ex rel. Jeffs*, 2012 UT 11, ¶ 23, this determination is best viewed as an inquiry into whether a supplier may fulfill its duty to warn the ultimate user by warning the intermediary or whether the circumstances require a direct warning. Although we note this difference, it does not affect the application of the factors we adopt from Section 2(c) comment i. *See* RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2 cmt. i.

[39] RESTATEMENT (SECOND) OF TORTS § 388 cmt. n; RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2 cmt. i.

[40] RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2 cmt. i.

¶37 Rather, the question of whether a duty to warn the ultimate user is satisfied by warning the intermediary is one that must be answered based on "reasonableness in the circumstances."[41] Among the factors to consider when determining reasonableness are "the gravity of the risks posed by the product, the likelihood that the intermediary will convey the information to the ultimate user, and the feasibility and effectiveness of giving a warning directly to the user."[42] In other words, although dangerous products "are often supplied for the use of others," providing warnings only to the purchaser is not always sufficient "to relieve the supplier from liability."[43] The supplier's burden to warn the ultimate user increases with the gravity of the risk and the ease with which such warnings may be issued. "Where the danger involved in the ignorant use of [the product] is great and such means of disclosure are practicable and not unduly burdensome, it may well be that the supplier should be required to adopt them."[44]

1. The Learned Intermediary Rule

¶38 Tracker and Brunswick rely upon the learned intermediary rule to argue that they satisfied any duty to warn the passenger by adequately warning the purchaser and then relying on the purchaser to warn the passenger.[45] We have previously recognized the learned intermediary rule in narrow circumstances only.[46] We remove the

---

[41] *Id.*

[42] *Id.*

[43] RESTATEMENT (SECOND) OF TORTS § 388 cmt. n.

[44] *Id.*

[45] The learned intermediary is sometimes called the "sophisticated intermediary" or "sophisticated purchaser," which makes "[t]erminology in this area of law . . . notoriously confusing." *Webb v. Special Elec. Co.*, 370 P.3d 1022, 1027 & n.1 (Cal. 2016). We note that Tracker and Brunswick refer to it as the "sophisticated intermediary." But we retain "learned intermediary" as adopted in our previous line of cases. *See Schaerrer v. Stewart's Plaza Pharmacy, Inc.*, 2003 UT 43, 79 P.3d 922.

[46] *See Schaerrer*, 2003 UT 43, ¶¶ 19-22. In *Schaerrer*, we recognized the learned intermediary rule with respect to the duty of pharmacists and drug manufacturers to warn patients—the ultimate users—of drug risks. *See id.* ¶¶ 20–22. Under this rule, a pharmacist or drug manufacturer needs to provide adequate warnings only to

(continued . . .)

limitation and expand the rule, consistent with the Restatement provisions discussed above, and hold that on remand the district court should consider the applicability of the rule to the facts of the present case.

¶39     The learned intermediary rule applies in cases where the intermediary is a sophisticated party or a party with a full range of knowledge "equal to that of the supplier."[47] It applies "only if a manufacturer provided adequate warnings to the intermediary"[48] "or sells to a sufficiently sophisticated buyer and reasonably relies on the buyer to warn end users about the harm. Reasonable reliance depends on all attendant circumstances and is typically a question of fact for the jury."[49] The rule weighs the considerations from section 388 and section 2(c) in determining whether a manufacturer has fulfilled its duty to warn the ultimate user by adequately warning the learned intermediary.[50]

¶40     For example, in *Webb v. Special Electric Co.* the California Supreme Court recognized that "[a]lthough all sellers in a product's distribution chain have a duty to warn about known hazards, they may in some cases discharge that duty by relying on others to warn downstream users"[51] because "circumstances may make it extremely difficult, or impossible, for a . . . supplier to provide warnings directly to the consumers of finished products."[52]

---

physicians. *Id.* ¶¶ 20, 22. The pharmacist or drug manufacturer  may then rely on the physicians to convey the warnings to the patient. We recognized this principle because, given their expertise, relationship with the patient and understanding of the patient's needs, the physicians were in a better position to warn their patients. *Id.* ¶ 20.

[47] *Gray v. Badger Mining Corp.*, 676 N.W.2d 268, 277–78 (Minn. 2004).

[48] *Webb*, 370 P.3d at 1035 (citation omitted).

[49] *Id.* at 1029.

[50] *See* RESTATEMENT (SECOND) OF TORTS § 388; RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2 cmt. i.

[51] 370 P.3d 1022, 1027 (2016).

[52] *Id.* at 1033.

¶41   The court cited *Persons v. Salomon North America, Inc.*,[53] where a skier sued a manufacturer of ski bindings after the bindings failed to release properly during a fall.[54] Aware that the bindings were not compatible with certain boots, the manufacturer had warned the ski rental facility of the issue and "instructed the facility how to recognize and treat incompatible boots."[55] But the manufacturer did not warn skiers directly.[56] The court noted that when there is "no effective way to convey a product warning to the ultimate consumer, the manufacturer should be permitted to rely on downstream suppliers to provide the warning."[57] Additionally, "the binding manufacturer's reliance was reasonable because the rental shop 'had an independent duty to exercise reasonable care in supplying this equipment and was itself subject to strict liability for failure to warn its customers of the dangerous propensities of articles it rented.'"[58] The manufacturer had therefore satisfied its duty to warn.[59]

¶42   It may be reasonable to rely on the learned intermediary where there is a high likelihood that the intermediary will convey the information to the ultimate user. Reasonable reliance on the intermediary to convey the warnings often arises in situations where the employer is the intermediary and employees are the ultimate users. For example, in *Davis v. Avondale Industries, Inc.*, a welding employee sued a manufacturer for failure to warn her of the dangers from breathing in the fumes emitted by its brazing rods.[60] The Fifth Circuit recognized that because of the special duties an employer has to its employees, "[m]any courts hold that the supplier of a product to an employer" satisfies any duty to warn the purchaser's employees "by warning their employer."[61] The court also noted that

---

[53] 217 Cal.App.3d 168 (Ct. App. 1990).

[54] *Id.* at 1034; *see Persons*, 217 Cal.App.3d at 168.

[55] *Webb*, 370 P.3d at 1034.

[56] *Id.*

[57] *Id.* (citing *Persons*, 217 Ca.App.3d at 178); *see* RESTATEMENT (SECOND) OF TORTS § 388 cmt. n.

[58] *Webb*, 370 P.3d at 1034 (citing *Persons*, 217 Cal.App.3d at 178).

[59] *Id.*

[60] 975 F.2d 169, 171 (5th Cir. 1992).

[61] *See id.* at 173–74.

the manufacturer had reason to believe that the employer was in a better position than the manufacturer to warn its employees.[62] The court further stated that if the supplier could show that the employer knew of the dangers associated with the brazing rod, the supplier could satisfy its duty to warn as a matter of law.[63]

¶43  In sum, we clarify that a boat manufacturer or supplier has a duty to adequately warn passengers of the boat's latent dangers and whether this duty has been satisfied by warning an intermediary is governed by a reasonableness standard. We also expand our recognition of the learned intermediary rule as expressed in section 388 of the Second Restatement and section 2 of the Third Restatement of Torts.[64]

## CONCLUSION

¶44  With respect to the question of whether Tracker and Brunswick issued adequate warnings, we modify the third prong of the *House* standard for determining the adequacy of a warning as follows: the warning must be of an intensity *and at a level of specificity* justified by the magnitude of the risk.[65] Because the district court granted summary judgement on the warnings based in part on the exclusion of sworn statements, which exclusion the court of appeals found to be error, we remand to the district court for further proceedings consistent with our opinion to consider the adequacy of the warnings in light of the admitted sworn statements and the modified adequacy standard.

¶45  With respect to the question of whether Tracker and Brunswick owed a duty to directly warn passengers of the dangers associated with failure to wear the lanyard, we clarify that, as a matter of law, a manufacturer or supplier owes a duty to warn the ultimate user. In determining whether these warnings must be issued directly or whether this duty may be satisfied by warning an

---

[62] *See id.*

[63] *See id.* at 173–74. The court ultimately reversed and remanded for a new trial so the court could provide the manufacturer's requested jury instruction consistent with these concepts. *See id* at 174–75.

[64] RESTATEMENT (THIRD) OF TORTS: PRODS. LIAB. § 2(c).

[65] *See House v. Armour of Am., Inc. (House I)*, 886 P.2d 542, 551 (Utah Ct. App. 1994), *aff'd*, 929 P.2d 340 (Utah 1996).

intermediary, we adopt the standard of reasonableness in the circumstances. And we expand the learned intermediary rule consistent with the applicable restatement provisions. We remand to the district court for further proceedings consistent with our clarification of the law and adoption of the reasonableness standard.

———————————